UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANTOINETTE BURNS,<br>　　　　Plaintiff<br><br>　　　v.<br><br>GEORGETOWN UNIVERSITY<br>MEDICAL CENTER, *et al.*,<br>　　　　Defendants | Civil Action No. 13-898 (CKK) |

**MEMORANDUM OPINION and ORDER**
(May 28, 2015)

　　Discovery in this case was set to close on March 15, 2015, but at the Status Hearing held on March 20, 2015, the parties reported several issues that emerged in the final weeks of discovery that they were unable to resolve. The Court ordered briefing of those issues, which are now ripe for resolution. Currently before the Court are three discovery-related motions: Plaintiff's [44] Motion for Leave to Supplement Initial Disclosures to Add Additional Witnesses, Defendants' [45] Motion to Strike Plaintiff's Second Expert Report and Preclude Related Testimony, and Defendants' [46] Motion to Compel Deposition Testimony Pursuant to Rule 37(a)(3)(B)(i). For the reasons stated below, the Court DENIES Defendants' [45] Motion to Strike Plaintiff's Second Expert Report and Preclude Related Testimony; GRANTS Plaintiff's [44] Motion for Leave to Supplement Initial Disclosures to Add Additional Witnesses; and GRANTS IN PART and DENIES IN PART Defendants' [46] Motion to Compel Deposition Testimony Pursuant to Rule 37(a)(3)(B)(i). The Court extends the close of discovery for the limited purposes detailed below.

**Standard for Discovery Sanctions**

　　"The Federal Rules of Civil Procedure allow a court to impose sanctions for a party's failure to cooperate during the course of discovery." *Davis v. Dist. of Columbia Child & Family Svcs. Agency,* 304 F.R.D. 51, 59 (D.D.C.2014). Federal Rule of Civil Procedure 37 "sets forth specific guidelines for the imposition of sanctions when a party fails to disclose information or witnesses, answer interrogatories, attend a deposition, or comply with a court order." *Id. See also* Fed. R. Civ. P. 37(b)(2), (d). Pursuant to Rule 37, a district court has broad discretion to impose sanctions for discovery violations. *Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 642-43 (1976) (per curiam).

　　"The central requirement of Rule 37 is that 'any sanction must be just,' which requires in cases involving severe sanctions that the district court consider whether lesser sanctions would be more appropriate for the particular violation." *Bonds v. Dist. of Columbia,* 93 F.3d 801, 808 (D.C. Cir. 1996) (quoting *Insurance Corp. v. Compagnie des*

*Bauxites de Guinée,* 456 U.S. 694, 707 (1982)). "The choice of sanction should be guided by the 'concept of proportionality' between offense and sanction." *Id.* "In determining whether a severe sanction is justified, the district court may consider the resulting prejudice to the other party, any prejudice to the judicial system, and the need to deter similar misconduct in the future." *Id.*

**Defendants' Motion to Strike Expert Report**

Defendants seek to strike the expert report that was submitted by Plaintiff's expert, Dr. Gregory Blaschke, on March 11, 2015, the morning of the scheduled deposition of Dr. Blaschke. Defendant argues that the report was untimely and argues that this report—the second submitted by Dr. Blaschke—cannot properly be considered a supplement to the original report. Plaintiff responds that the report is a supplement under Rule 26(e) and that, even if it is not considered a supplement, it should be allowed because the opinions in it were disclosed to Defendants such that there was no prejudice.

Rule 26(a)(2) requires that "a party's expert witnesses must provide the opposing party with a written report containing, among other things, 'a complete statement of all opinions the witness will express and the basis and reasons for them; [and] the data or other information considered by the witness in forming them; [and] any exhibits that will be used to summarize or support them.'" *Iacangelo v. Georgetown Univ.*, 272 F.R.D. 233, 233 (D.D.C. 2011) (quoting Rule 26(a)(2)(B); alterations in original). "Rule 26(e)(1) provides a limited exception to the deadlines provided in Rule 26(a)(2)(C), requiring that an expert witness supplement his report if he 'learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not been made known to the other parties during the discovery process or in writing.'" *Minebea Co. v. Papst*, 231 F.R.D. 3, 6 (D.D.C. 2005) (quoting Fed. R. Civ. P. 26(e)(1)). "[S]upplemental reports are permitted under Rule 26(e)(1) only in the following situations: (1) upon court order; (2) when the party learns that the earlier information is inaccurate or incomplete; or (3) when answers to discovery requests are inaccurate or incomplete." *Id.*

Pursuant to Rule 26(a)(2), Dr. Gregory Blaschke provided a report dated July 7, 2014, on Plaintiff's behalf, regarding the termination of Dr. Burns, particularly focusing on whether the customary "due process" was followed in this case. After the depositions of the fact witnesses in this case, Dr. Blaschke provided an additional report, which was provided to Defendants on the morning of the scheduled deposition of Dr. Blaschke, March 11, 2015. While the additional report is not *as* unrelated and *as* broad as Defendants claim, it clearly exceeds the scope of the original report. Specifically, in addition to commenting on the termination process, Dr. Blaschke provided opinions regarding the quality and content of the fellowship program. With respect to timeliness, the morning of a scheduled deposition is too late to provide such a report to Defendants and to expect Defendants to be able to use the scheduled deposition to question the

witness about that report. That timing hardly provides enough time for Defendants' counsel to carefully read the report, let alone prepare for a deposition based on that report.

However, notwithstanding the untimeliness of the report and the expansion in its scope, the Court notes that this issue arose near the close of discovery and the Court has not yet set a schedule for the briefing of dispositive motions or set a trial date in this case. Therefore, the Court will exercise its discretion to allow Plaintiff's second expert report. That said, because of the expanded scope and because of the untimeliness of its delivery, the Court will allow Defendants to depose Plaintiff's expert a second time *at Plaintiff's expense, including the costs for the court reporter and for Defendants' attorneys' time at the deposition*. As Defendants request, the Court will allow Defendants' to retain a counter-expert. But Plaintiff's expert may not produce a new report—or supplement or alter the existing reports—in response to the opinions provided by the counter-expert. Plaintiff has already submitted a *second* expert report; it would not be fair to allow Plaintiff a *third* bite at the apple as result of their actions. The testimony of Plaintiff's expert is limited to the contours and scope of the expert reports already submitted.

In addition, as Defendants request, the Court will allow discovery by Defendants from the Air Force as to "the bargain it expected." Defs.' Expert Opp'n, ECF No. 45, at 8 n.6. This will allow Defendants to explore, through discovery, issues that were discussed in Plaintiff's second expert report but not covered in the first expert report.

Accordingly, the Court DENIES Defendants' [45] Motion to Strike Plaintiff's Second Expert Report and Preclude Related Testimony and allows additional discovery as specified here.

**Plaintiff's Motion to Present Additional Witnesses**

Plaintiff seeks to supplement her initial disclosures pursuant to rule 26(a) to add two individuals who have knowledge of damages suffered by Plaintiff: her husband, John Harris, and her mother, Aileen Burns.[1] Plaintiff has offered these witnesses for deposition. Defendants argue that, because the addition of these witnesses is untimely, the Court should not allow the supplementation of the initial disclosures and that the testimony of these witnesses should be excluded.

"Rule 37(c)(1) provides for the exclusion at trial of any information not disclosed pursuant to Rule 26(a), unless the failure to disclose is harmless, or if there is substantial justification for such failure." *Iacangelo v. Georgetown Univ.*, 272 F.R.D. 233, 234 (D.D.C. 2011) (citing Fed. R. Civ. P. 37(c)(1)).

---

[1] While Plaintiff initially included a request to add a psychologist whom Plaintiff is seeing in therapy, Plaintiff subsequently withdrew that request. *See* Plaintiff's Praecipe to Withdraw Request to Add as a Witness Plaintiff's Psychologist, ECF No. 53.

Discovery in this case was set to close on March 15, 2015. While Plaintiff's counsel only became aware that Plaintiff was seeing a psychologist for therapy at Plaintiff's February 25, 2015, deposition, that is no excuse for the failure to identify these witnesses earlier. Plaintiff is responsible for identifying witnesses that may have information pertaining to her claims, and Plaintiff's counsel is responsible for obtaining that information from his client. They failed to do so in a timely fashion. Plaintiff notes that the initial disclosures were filed on May 9, 2014, and she only began seeing a psychologist for treatment in October 2014. At a minimum, however, Plaintiff ought to have promptly supplemented her initial disclosures, as well as responses to relevant discovery requests, when treatment began. If Plaintiff had done so, Defendants would likely have been able to depose these witnesses prior to the close of discovery. At the same time, the Court notes that Plaintiff was ill and under medical treatment for a portion of this time—which was the justification for the extension of the close of discovery from October 2014 to March 2015—which may, at least partially, help to explain, if not justify, Plaintiff's failure to identify the witnesses at an earlier time.

Given that context, in an exercise of its discretion, the Court will allow Plaintiff to supplement her disclosures and will not exclude testimony from Plaintiff's mother and husband. *See Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 642-43 (1976) (per curiam). However, the Court will allow Defendants to depose the witnesses or issue interrogatories with respect to them. Allowing testimony from these witnesses will cause delay—an important consideration in and of itself—but Defendants have identified little other prejudice that would be caused by allowing this testimony. Compliance with the Court's scheduling orders is of utmost importance. However, it is also notable that these issues arose around the close of discovery, and the Court has not yet set a schedule for the briefing of dispositive motions, let alone set a trial date in this case. Given that this issue has arisen before the briefing of any dispositive motions, Plaintiff can cure the harm caused by the inadequate disclosures by promptly providing the two additional witnesses for depositions at this point, as well as by responding to any interrogatories with respect to these witnesses. And, because the Court allows additional discovery regarding Plaintiff's second expert report, as specified above, allowing these additional two witnesses will not cause any additional delay. Nor will Plaintiff's request require a duplicative second deposition of the two family members because they had not been deposed on other matters previously. The Court concludes that it would not be "just," in these circumstances, to preclude the testimony of these witnesses. *See Bonds,* 93 F.3d at 808.

Accordingly, the Court GRANTS Plaintiff's [44] Motion for Leave to Supplement Initial Disclosures to Add Additional Witnesses. Plaintiff shall promptly make these witnesses available for deposition by Defendants. If Defendants choose to issue any interrogatories with respect to these witnesses, Plaintiff shall promptly respond to them.

**Defendants' Motion to Compel Plaintiff's Deposition Testimony**

In Defendants' [46] Motion to Compel Deposition Testimony Pursuant to Rule 37(a)(3)(B)(i), Defendants seek to compel Plaintiff's deposition testimony regarding two instances where Plaintiff's counsel instructed her not to respond to Defendants' questions during her deposition. First, Defendants seek to compel Plaintiff's testimony regarding an email she received, via her attorney, from an attorney representing one of the Defendants. Second, they seek to compel Plaintiff's testimony regarding an email that she sent in which she mentioned MedStar. The Court discusses, in turn, the two issues.

First, Defendants seek to compel Plaintiff's testimony regarding an email she received, via her attorney, from Lily Garcia, an attorney for Defendant Georgetown University Medical Center. In the email, Garcia lays out several options for Plaintiff to pursue further review of the decision regarding her fellowship. Defendants seek to compel Plaintiff's testimony regarding her awareness of the options for post-dismissal review communicated by Defendant and regarding her decision not to use those options. Plaintiff argues that it was proper to refrain from answering because the communication was a settlement communication governed by Federal Rule of Evidence 408 and because the information responsive to the questions are protected by attorney-client privilege.

As an initial matter, the Court notes that it does not decide today whether evidence would be admissible at trial. The Court only decides whether Plaintiff can be compelled to testify about certain matters in a deposition. Importantly, Rule 408 was enacted to promote settlement of disputes "through limits on the *admissibility* of settlement material rather than limits on their *discoverability*." *In re Subpoena Issued to Commodity Futures Trading Comm'n*, 370 F. Supp. 2d 201, 211 (D.D.C. 2005) *aff'd in part on other grounds sub nom. In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*, 439 F.3d 740 (D.C. Cir. 2006) (emphasis in original). Moreover, it does not appear that the email in question constitutes a settlement offer because it was framed as an unconditional offer and did not "require the employee to abandon or modify his suit." *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 909 (2d Cir. 1997). Accordingly, the Court concludes that Defendants' questions regarding the email from Garcia are not barred as an inquiry into settlement communications.

Turning now to whether the responses to Defendants' questions are protected by the attorney-client privilege, the Court first notes that the email exchange is not privileged simply because the email was sent from Plaintiff's attorney to Plaintiff. Just because Plaintiff's attorney forwarded the email to her does not make the communication, which originated from a third-party, privileged. The Court concludes that the answer to the questions about *whether* Plaintiff was aware of the "alternative" laid out by Garcia and *whether* she accepted that "alternative" are not privileged because the responses to those questions would not reveal advice of counsel. However, the Court concludes that the answer to the question of *why* Plaintiff decided to respond to the "alternative" set out by

Garcia as she did is privileged because it is apparent that the answer would rely on advice of counsel. *See In re Lindsey*, 158 F.3d 1263, 1267 (D.C. Cir. 1998) (communications for the purpose of securing legal advice protected). The Court concludes that Plaintiff has not waived the privilege—regarding the reasons *why* she did not accept the "alternative" set out by Garcia—because Plaintiff has not affirmatively placed the reasons for this action at issue by bringing claims regarding the termination process. *See The Navajo Nation v. Peabody Holding Co.*, 255 F.R.D. 37, 50 (D.D.C. 2009)

Second, Defendants seek to compel Plaintiff's testimony regarding an email that she sent to another medical professional, in which she wrote, "[t]here may be some things to clean up with MedStar, as they own Georgetown." Relying on attorney-client privilege, Plaintiff's counsel instructed Plaintiff not to answer Defendants' questions about the reasons she made that written statement. Plaintiff now argues that the answers to Defendants' questions regarding this statement were derived from advice from her attorney and are, therefore, privileged. Defendants argue that the response to Defendants' question is not privileged because they pertain to a communication with a non-attorney.

As an initial matter, it is clear that the email from Dr. Burns is itself not subject to attorney-client privilege because the recipient was not her attorney. However, the Court agrees with Plaintiff that the response to Defendants' question was subject to attorney-client privilege and that Plaintiff was entitled to refuse to answer the question on that basis. During a break in the deposition—off the record—Plaintiff's counsel consulted with his client about what her answer to Defendants' question would be, if it were not privileged. He determined that the content of that answer is privileged because it pertained to advice received from counsel, and he instructed Plaintiff not to answer the question.

"The attorney-client privilege protects confidential communications made between clients and their attorneys when the communications are for the purpose of securing legal advice or services." *In re Lindsey*, 158 F.3d at 1267. Moreover, "[t]he Supreme Court has also clearly recognized that 'the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice.'" *United States v. ISS Marine Servs., Inc.*, 905 F. Supp. 2d 121, 128 (D.D.C. 2012) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981)). It is a reasonable inference from the colloquy at the deposition, together with counsel's express representation that Plaintiff's response to the question would entail revealing communications between Plaintiff and her attorney, that the underlying communications are privileged. Therefore, the Court concludes that Plaintiff was within her rights to refuse to answer the Defendants' questions about her statement that "[t]here may be some things to clean up with MedStar." Accordingly, Defendants' request to compel Plaintiff's deposition testimony on this matter is denied.

For these reasons, Defendants' [46] Motion to Compel Deposition Testimony Pursuant to Rule 37(a)(3)(B)(i) is GRANTED IN PART and DENIED IN PART. With respect to the questions regarding the email from Lily Garcia, Plaintiff is required to answer the questions regarding (1) whether she was aware of the "alternative" laid out by Garcia and (2) whether she accepted or rejected it. In all other respects, the motion is denied and Plaintiff is not compelled to respond to the areas of inquiry that are the subject of this motion.

**Conclusion**

For all the reasons stated above, it is **ORDERED** that Defendants' [45] Motion to Strike Plaintiff's Second Expert Report and Preclude Related Testimony is DENIED. The Court allows additional discovery with respect to this report as specified above.

It is further **ORDERED** that Plaintiff's [44] Motion for Leave to Supplement Initial Disclosures to Add Additional Witnesses is GRANTED. Plaintiff shall promptly make these witnesses available for deposition by Defendants. If Defendants choose to issue any interrogatories with respect to these witnesses, Plaintiff shall promptly respond to them.

It is further **ORDERED** Defendants' [46] Motion to Compel Deposition Testimony Pursuant to Rule 37(a)(3)(B)(i) is GRANTED IN PART and DENIED IN PART. With respect to the questions regarding the email from Lily Garcia, Plaintiff is required to answer the questions regarding (1) whether she was aware of the "alternative" laid out by Garcia and (2) whether she accepted or rejected it. In all other respects, the motion is denied and Plaintiff is not compelled to respond to the areas of inquiry that are the subject of this motion.

It is further **ORDERED** that the parties shall file a Joint Supplemental Discovery Plan setting out a schedule for the remaining discovery. That discovery plan shall be filed no later than **June 12, 2015**. Because of the delay necessarily entailed by allowing additional discovery, the Court strongly encourages the parties to expeditiously complete the remaining discovery. In particular, because the need to extend discovery results almost wholly from Plaintiff's actions and omissions, Plaintiff shall make all reasonable efforts to accommodate an expedited schedule for completing the discovery in this case. The Court will set a fixed date for the extension of discovery after it reviews the parties' Joint Supplemental Discovery Plan.

**SO ORDERED**.

Dated: May 28, 2015

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge