# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |  |
|---|---|
| ANTOINETTE BURNS,<br><br>        Plaintiff,<br><br>    v.<br><br>MATTHEW D. LEVY, *et al.*,<br><br>        Defendants. | Civil Action No. 13-898 (CKK) |

## MEMORANDUM OPINION[1]
(March 14, 2019)

Defendants Matthew D. Levy and Medstar Georgetown University Hospital (the "Hospital")[2] invoke the peer review privilege in this jurisdiction to shield themselves from Plaintiff Antoinette Burns' claim of negligent defamation.[3] Because the Court finds that the United States Air Force entities to which Defendants provided certain information about Plaintiff do not qualify as "peer review bodies" under the relevant statute, that privilege is not available to Defendants.

---

[1] Decisions by this Court and the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") have used several different case captions in this matter. The Court presently adjusts its former caption for consistency with the D.C. Circuit's version. That version has the virtue of referring to a defendant, Matthew D. Levy, who remains in this case, and it avoids certain nuances in the appropriate title of current and former institutional defendants. *See, e.g.*, *infra* note 2.

[2] The Court has previously observed that Medstar-Georgetown Medical Center, Inc. does business as Medstar Georgetown University Hospital, and that former defendant Georgetown University does business as Georgetown University Medical Center. *Burns v. Georgetown Univ. Med. Ctr.*, Civil Action No. 13-898 (CKK), 2016 WL 4275585, at *1 n.1 (D.D.C. Aug. 12, 2016).

[3] Claims against Georgetown University Medical Center were dismissed, and that dismissal was affirmed. *See id.* at *7-*13; *Burns v. Levy*, 873 F.3d 289, 291, 293-95 (D.C. Cir. 2017).

1

Upon consideration of the briefing,[4] the relevant legal authorities, and the record as a whole, the Court **DENIES** Defendants' [86] Joint Motion for Partial Summary Judgment as to the Applicability of the District of Columbia Peer Review Act to Plaintiff's Counts of Defamation. Plaintiff's negligent defamation claim must continue to trial along with her other remaining claim of intentional defamation.

## I. BACKGROUND

**A. Factual Background**

The Court examined the facts of this case in its prior summary judgment ruling, to which it refers the reader. *See* Mem. Op. at 3-12, *Burns v. Georgetown Univ. Med. Ctr.*, Civil Action No. 13-898 (CKK), 2016 WL 4275585, at *2-*6 (D.D.C. Aug. 12, 2016) ("*Burns I*"), ECF No. 81. Here the Court focuses on those undisputed facts that are pertinent to the pending motion.

Plaintiff served as a pediatrician in the United States Air Force, specifically working for the United States Air Force Medical Service ("AFMS"). Defs. Medstar Georgetown University Hospital's and Matthew D. Levy, M.D.'s Stmt. of Material Facts as to Which There Is No Material Dispute in Supp. of Their Mot. for Partial Summ. J., ECF No. 86-2 ("Defs.' Stmt."), ¶¶ 1, 2. As part of her military service, Plaintiff began pursuing a specialized pediatric fellowship at the

---

[4] The Court's consideration has focused on the following documents:

- Defs. Medstar Georgetown University Hospital's and Matthew D. Levy, M.D.'s Mem. of P&A in Supp. of Their Mot. for Partial Summ. J. as to the Applicability of the District of Columbia Peer Review Act to Pl.'s Counts of Defamation, ECF No. 86-1 ("Defs.' Mem.");

- Pl.'s Mem. in Opp'n to Defs.' Joint Mot. for Partial Summ. J., ECF No. 87 ("Pl.'s Opp'n"); and

- Defs. Medstar Georgetown University Hospital's and Matthew D. Levy, M.D.'s Reply to Pl.'s Opp'n to Their Mot. for Partial Summ. J. as to the Applicability of the District of Columbia Peer Review Act to Pl.'s Counts of Defamation, ECF No. 88 ("Defs.' Reply").

Hospital in August 2011. *See id.* ¶ 3; Pl.'s Stmt. of Disputed Material Facts and Additional Material Facts Not in Dispute, ECF No. 87-1 ("Pl.'s Stmt."), ¶¶ 18, 19, 33.

For reasons beyond the scope of this opinion, Plaintiff's participation prematurely terminated in April 2012. Pl.'s Stmt. ¶ 72. The Court need not address distinctions between the termination-related activities of the Hospital and Georgetown University Medical Center (the "University"), certain of which constitute a lingering contested issue. *See infra* Part I.B. In any case, also in April 2012, Defendant Levy, the Medical Director for Community Pediatrics, and Jamie S. Padmore, Vice President, Academic Affairs, Medstar Health, Inc., had a discussion about Plaintiff with two Air Force officials, including Colonel Thomas Grau, M.D., then-chief of the Physician Education Branch of AFMS. Defs.' Stmt. ¶ 5; Pl.'s Stmt. ¶¶ 38, 69. Col. Grau requested an evaluation of Plaintiff using a certain rubric. Defs.' Stmt. ¶ 5. His successor, Colonel Michael Tankersley, M.D., reiterated that request by email in December 2012 and January 2013. *Id.* ¶¶ 7, 11. By January 2013, the Air Force Centralized Credentialing Verification Office ("AFCCVO") had also sent a request for certain information, which Col. Tankersley took the opportunity to reinforce in his communication that month. *Id.* ¶¶ 10, 11.

**B. Procedural Posture**

In this lawsuit, Plaintiff pursued contract-based claims, defamation claims, and a claim of intentional interference with prospective economic advantage against a combination of the Hospital, the University, and Levy. 2d Am. Compl., No. 26. The Court granted summary judgment for all three Defendants as to all claims and dismissed Plaintiff's case. *Burns I*, Civil Action No. 13-898 (CKK), 2016 WL 4275585. On appeal, the D.C. Circuit affirmed dismissal of all but the defamation claims, as to which it reversed and remanded to this Court for certain further determinations. *Burns v. Levy*, 873 F.3d 289 (D.C. Cir. 2017) ("*Burns II*").

Upon remand, this Court determined that one of the lingering issues—whether the Hospital or the University was first to terminate Plaintiff—could not be resolved by further summary judgment briefing, based on the D.C. Circuit's characterization of the record. Scheduling and Procedures Order, ECF No. 85, at 1-2 (citing *Burns II*, 873 F.3d at 292, 295)). The Court reserved that issue for trial. *Id.* at 2. The other issue—the applicability of the District of Columbia's Health Care Peer Review Act—is the subject of the present briefing. *See id.* at 1.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of *some* factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact. *Id.* Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

A party attempting to place a fact beyond dispute, or to show that it is truly disputed, must (a) rely on specific parts of the record, such as documentary evidence or sworn statements, or (b) "show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *See Ass'n of Flight Attendants-CWA, AFL-CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a

party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not assess credibility or weigh evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with "all justifiable inferences . . . drawn in his favor." *Anderson*, 477 U.S. at 255. "If material facts are at issue, or though undisputed, are susceptible to divergent inferences, summary judgment is not available." *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009) (quoting *Kuo-Yun Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994)) (internal quotation marks omitted). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.

### III. DISCUSSION

Some decades or further ago, health care entities developed a practice of "peer review," whereby, for example, medical professionals exchange information to gauge the qualifications of prospective colleagues and monitor the performance of current colleagues. *See generally, e.g.*, 41 C.J.S. Hospitals § 16 (2019). Although this process has taken various forms, it is safe to say that the permutations share a common goal: to ensure a well-functioning medical system that ultimately inures to the benefit of patient care.

5

An effective peer review process requires candor on the part of those providing sensitive assessments of their colleagues. The *quid pro quo* for that frankness is the assurance that recipients will treat the information as confidential. But the assessor supplying the information wants something more: Immunity from liability in the event that the assessee or someone else is unhappy with the sharing—or perhaps the candor thereof.

The pending Joint Motion generally concerns the availability of this immunity; it is to this facet of peer review protections that the Court shall refer with the term, "peer review privilege." Only one narrow issue is dispositive here: Whether the specific recipients of the sensitive information in this case qualify as "peer review bodies" under the statute establishing the privilege in this jurisdiction, the District of Columbia's Health Care Peer Review Act, D.C. Code §§ 44-801 *et seq.* For the reasons that follow, that answer is no. As a result, those who furnished the sensitive information cannot rely on the peer review privilege in their own defense.

The parties' briefing was of limited assistance in reaching this conclusion. For one thing, Defendants tried to bootstrap the nature of the information exchanged to support rather thin attempts to show that certain U.S. Air Force entities satisfy the definition of peer review bodies. *See, e.g.*, Defs.' Mem. at 11-14. Moreover, the case law construing the Health Care Peer Review Act is scant. The parties have not identified any cases, nor has the Court found any, that address the scope of the District of Columbia's peer review privilege in more than cursory fashion. *See Oguntoye v. Medstar Georgetown Univ. Hosp.*, Civil Case No. 2013 CA 5054, 2015 D.C. Super. LEXIS 6, at *11-*12 (D.C. Super. Ct. Apr. 3, 2015) (briefly concluding that putatively false information was instead an opinion, and therefore did not breach D.C. privilege); *Ali v. MedStar Health*, Civil Action No. 99ca001753, 2003 D.C. Super. LEXIS 32, at *10 (D.C. Super. Ct. Aug.

15, 2003) (citing defendants' argument that D.C. privilege applies, but proceeding exclusively under related federal statute).[5] The scope of the privilege is not really at issue though.

The Court need only determine whether the statutory definition of a peer review body encompasses the U.S. Air Force entities in this case. Reported cases touching on that definition appear to be limited to the context of discovery and admissibility under D.C. Code § 44-805. *See Ervin v. Howard Univ.*, 445 F. Supp. 2d 23 (D.D.C. 2006); *Stone v. Alexander*, 6 A.3d 847 (D.C. 2010); *see also Jackson v. Scott*, 667 A.2d 1365 (D.C. 1995) (implicitly relying on, but not citing, relevant definition). These few cases help to illuminate the statutory scheme and, to some extent, the definition of a peer review body. But because this case turns more closely on underexamined parts of that definition, the Court must proceed primarily by its own lights. First, the Court shall introduce the Air Force entities that Defendants propose to qualify as one or more peer review bodies.

### A. Relevant U.S. Air Force Entities

The specific recipients of the sensitive information in this case are the U.S. Air Force entities known as the Physician Education Branch and the AFCCVO. The AFMS website characterizes these entities as "organizations" within AFMS. Defs.' Mem., Ex. 13, ECF No. 86-15;[6] Defs.' Stmt. ¶ 15.[7] Defendants argue that AFMS, the Physician Education Branch and/or its

---

[5] Defendants in this case have not invoked a federal grounds for their peer review defense.

[6] Although this exhibit lists an organization entitled the "*Physical* Education Branch," another exhibit referring to the "*Physician* Education Branch" suggests that the former is a typographical error and corroborates the parties' references exclusively to the latter. Defs.' Mem., Ex. 13, ECF No. 86-15, at 2 (emphasis added); Defs.' Mem., Ex. 14, ECF No. 86-16, at 1 (emphasis added); *see also, e.g.*, Defs.' Stmt. ¶ 4.

[7] Defendants submitted a material fact paragraph identifying AFCCVO as such an organization, but did not do so for the Physician Education Branch. *See* Defs.' Stmt. ¶ 15. Nevertheless, the Court shall proceed on the seemingly uncontroversial basis that AFMS's website identifies the Physician Education Branch as an organization within AFMS as well.

7

chief, and the AFCCVO are peer review bodies, such that Defendants would be immune from liability for providing information to them. *See* Defs.' Mem. at 11-14. Proper assessment of that claim requires a little further understanding of what these entities are, based on undisputed facts in the record.

To begin with the umbrella entity, AFMS is characterized on its website as a provider of "full spectrum medical readiness to the 200,000 airmen currently engaged in operations around the world." Defs.' Stmt. ¶ 14 (quoting Defs.' Mem., Ex. 13, ECF No. 86-15) (internal quotation marks omitted). AFMS "deliver[s] health care to 2.6 million patients though [sic] a system of 239 clinics at 76 installations worldwide." *Id.* (quoting Defs.' Mem., Ex. 13, ECF No. 86-15) (internal quotation marks omitted).

The Physician Education Branch contributes to the work of AFMS by "manag[ing] all physician undergraduate and graduate programs sponsored by the Air Force," according to the Branch's webpage. *Id.* (quoting Defs.' Mem., Ex. 14, ECF No. 86-16, at 1) (internal quotation marks omitted). In addition to "review[ing] and process[ing] all applications for graduate medical education," the Physician Education Branch "monitor[s] the training progress of . . . residents and fellows in active duty and deferred programs." *Id.* (quoting Defs.' Mem., Ex. 14, ECF No. 86-16, at 1) (internal quotation marks omitted). During the relevant time period, the Physician Education Branch was headed first by Col. Grau followed by Col. Tankersley. Defs.' Stmt. ¶¶ 5, 7. Although the parties do not specifically discuss the number of physicians in the Physician Education Branch, Col. Grau's testimony suggests that, at least while he was in office, the chief was the only physician in the Branch. *See* Defs.' Mem., Ex. 3, ECF No. 86-5 (Dep. of Col. Thomas C. Grau at 18:17-19:1) ("So I was the only physician within my office at the time. I was the only physician, and we have a list of consultants from various specialties . . . . but they didn't work in our office.").

The other relevant AFMS organization, the AFCCVO, similarly self-reports that it "[e]nsures Medical Treatment Facilities (MTFs) receive properly completed [Primary Source Verification ("PSV")] credentials packages" and "[c]oordinates . . . the MTF credentialing and privileging process." Defs.' Stmt. ¶ 15 (quoting Defs.' Mem., Ex. 15, ECF No. 86-17) (internal quotation marks omitted) (some alterations in original). Ultimately, AFCCVO strives to "[s]upport [AFMS] through dependable and objective review, [PSV], and the documentation of credentials." *Id.* (quoting Defs.' Mem., Ex. 15, ECF No. 86-17) (internal quotation marks omitted) (second alteration in original).

Defendants describe the nature of these Air Force entities using the quoted webpages above, and illustrate these entities' work by reference to their role specifically in Plaintiff's case. *See, e.g.*, Defs.' Mem. at 11-14. But the entities' activities in this case do not materially affect the Court's analysis of whether any of them qualifies as a peer review body under the relevant statute, which the Court shall now construe.

### B. Statutory Structure

The District of Columbia's peer review privilege supplies immunity from liability under well-defined circumstances:

> No person, health-care facility or agency, health professional association, or group practice providing any report, note, record, or other data or information, including advice, opinion, or testimony, *to a peer review body* shall be liable to any other person for damages or equitable relief by reason of providing such a report, note, record, or other data or information, *unless the information provided was false and the person or entity providing the information knew the information was false*.

D.C. Code § 44-802 (emphasis added). The Hospital, which would appear to fit the below-described definition of a "health-care facility or agency," and Levy, who is a "person," would be immune from liability for negligent defamation if at least one of the Air Force entities to whom they supplied information about Plaintiff is a "peer review body." *Id.*; *see also id.* §§ 44-501(a)(1),

44-801(2). The falsehood exception is not at issue with a negligent defamation claim, as knowledge of the information's falsity would move the activity from a negligence tort to an intentional tort. *See Burns II*, 873 F.3d at 296 ("If the peer review privilege applies, Burns could not sustain her claim against the Hospital for *negligent* defamation; negligence as to the truth of the statement does not meet the knowledge exception to the peer review privilege.").

In turn, "peer review body" is defined by local statute as:

> a committee, board, hearing panel or officer, reviewing panel or officer or governing board of a health-care facility or agency, group practice or health professional association that engages in peer review, the health-care facility, agency, group practice or health professional association which establishes or authorizes or is governed by it, and a director, officer, employee, or member of such an entity.

D.C. Code § 44-801(6). This Russian nesting doll of a definition supplies three categories in which to qualify as a peer review body.

First is the specific type of entity that traditionally does the peer review: "a committee, board, hearing panel or officer, reviewing panel or officer or governing board of a health-care facility or agency, group practice or health professional association that engages in peer review." For convenience, the Court deems this category of entities to be "Category 1," given its placement in the definition of a peer review body.

Next are certain entities associated with the Category 1 entities: "health-care facility, agency, group practice or health professional association." Again, due to where it falls in the provision, the Court deems this category of entities to be "Category 2." A Category 2 entity "establishes," "authorizes," or "is governed by" a Category 1 entity.

And the third "entity" that could qualify as a peer review body is an individual person: "a director, officer, employee, or member of such an entity." This is the "Category 3" option. The antecedent of the clause, "of such an entity," requires some clarification, but a sister court

10

considering "[t]he language and purpose of the statute" has logically construed the referent to be the Category 2 entity that immediately precedes the Category 3 individual in the Section 44-801(6) definition. *Ervin*, 445 F. Supp. 2d at 26, 27.

As mentioned above, the discovery and admissibility cases under Section 44-805 are of limited utility to this decision. Like the Section 44-802 privilege, Section 44-805 turns on the definition of a peer review body. *E.g.*, D.C. Code § 44-805(a) (according confidentiality to "files . . . of a peer review body"). But cases construing Section 44-805 that cite or otherwise rely on the Section 44-801(6) definition have done so summarily, or considered parts of the definition with limited effect on the Court's analysis. *Compare Stone*, 6 A.3d at 851 n.9 (briefly concluding that "head of [hospital's] Peer Review Committee" was "officer of a reviewing panel" (internal quotation marks omitted)), *and Jackson*, 667 A.2d 1365 (definition of peer review body undisputed), *with Ervin*, 445 F. Supp. 2d at 26, 27 (examining only Category 3 of Section 801(6) in any depth). That precedent is not too helpful.

Now, do any of the Air Force entities identified by Defendants fall within any of these three categories?

**C. Application**

*1. Air Force Medical Service*

To start with AFMS, Defendants do not argue, nor could they plausibly on this record, that AFMS falls within Categories 1 or 3 of Section 44-801(6). The issue is whether AFMS is a Category 2 entity.

Defendants have as many as four "subcategories" to choose from, each of which is separately defined in Section 44-801: "health-care facility, agency, group practice or health professional association." What could conceivably be subcategories one and two are instead

11

defined together as a "'[h]ealth-care facility or agency[,]' [which] means a facility, agency, or other organizational entity as defined in § 44-501, or the Fire and Emergency Medical Services Department to the extent that it is operating as a pre-hospital medical care provider." D.C. Code § 44-801(2). Absent any argument or record evidence that AFMS is the "Fire and Emergency Medical Services Department" referenced in the statute, the Court considers whether AFMS is "a facility, agency, or other organizational entity as defined in § 44-501."

Although Section 44-501 expressly lists nine possible entities, Defendants propose only one: "Hospital," which is defined as "a facility that provides 24-hour inpatient care, including diagnostic, therapeutic, and other health-related services, for a variety of physical or mental conditions, and may in addition provide outpatient services, particularly emergency care." D.C. Code § 44-501(a) (also listing "Maternity center," "Nursing home," "Community residence facility," "Group home for persons with intellectual disabilities," "Hospice," "Home care agency," "Ambulatory surgical facility," and "Renal dialysis facility" (internal quotation marks omitted)); *see* Defs.' Mem. at 9, 13. Under Defendants' reading, AFMS would qualify as a "'health care facility or agency' given the medical treatment facilities, hospitals, and locations of care where it provides clinical patient services around the world." Defs.' Mem. at 13 (citing D.C. Code § 44-801(2)). Defendants fail to furnish any record citations for that proposition. Elsewhere, Defendants note that AFMS purportedly "deliver[s] health care to 2.6 million patients though [sic] a system of 239 clinics at 76 installations worldwide." Defs.' Mem. at 12 (quoting Defs.' Stmt. ¶ 14) (internal quotation marks omitted). But Defendants give no further information about those clinics. And even if they had, this leads to the second issue: Defendants do not claim that AFMS *itself* is one of these clinics, or more consistently with the statutory definition, that AFMS *itself* is a hospital; rather, it appears to be a unit within a branch of the armed forces.

The Court pauses to consider whether AFMS should nevertheless be shoehorned within the statutory definition of a hospital. In various places, Defendants urge that the Health Care Peer Review Act is to be broadly construed, in light of the statutory text and legislative history. *See, e.g.*, Defs.' Mem. at 8, 9, 13, 14 (citing Rep. of Comm. on Consumer and Regulatory Affairs on B. 9-355, at 3 (D.C. 1992) ("D.C. Council Rep."), cited in *Jackson*, 667 A.2d at 1368); Defs.' Reply at 10, 16; *see also, e.g.*, *Ervin*, 445 F. Supp. 2d at 25 (discussing breadth of Act in context of discovery protections). Back when the Act was under consideration, the D.C. Council's Committee on Consumer and Regulatory Affairs approved of this effort to "expand, strengthen and clarify the immunity and confidentiality protections of D.C. law as they relate to the participation of health care providers, consumers, and entities . . . engaged in the review and monitoring of the practice of health care providers and the provision of health care services." D.C. Council Rep. at 3. Under then-existing law, immunity evidently was limited to "only those medical practitioners and consumers directly involved in the proceedings of" "any one of four defined 'committees,'" and courts were known to carefully limit peer review protections accordingly. *Id.* at 5 (listing "medical staff committee"; "medical utilization review committee"; "'peer review committee' of a medical society or psychological association"; and "tissue review committee" (internal quotation marks omitted)).

With the passage of the Act, Section 44-802 clearly expanded the peer review privilege by extending immunity to those sharing information with any of the three categories of entities in Section 44-801(6). Category 2 includes health-care facilities or agencies further defined as hospitals or other entities in Section 44-501. But the plain text of these provisions requires no supplement. The Court's "inquiry ceases [in a statutory construction case] if the statutory language is unambiguous and the statutory scheme is coherent and consistent," as it is here. *Sebelius v.*

13

*Cloer*, 569 U.S. 369, 380 (2013) (quoting *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002)) (alteration in original). Accordingly, the Court has no reason to infer a definition of "hospital"—or any other relevant part of the current statutory scheme—that sweeps beyond the text to encompass AFMS.

Nevertheless, the text of Section 44-501 supplies at least one further option for AFMS to qualify as a health-care facility or agency. One might argue—though Defendants do not—that AFMS falls among the "variant types of facilities and agencies reasonably classified within" the definition of a hospital or the eight other entities in Section 44-501. D.C. Code § 44-501(b). "The Mayor [has] the authority to define [such] variant types," *id.*, but the parties have not invoked any such mayoral decision. In sum, the "health-care facility or agency" subcategory of Category 2 is available only to an entity that qualifies under Section 44-501, which AFMS does not.

AFMS could still qualify as one of the other two subcategories within Category 2, namely group practice or health professional association. The latter is easy enough to rule out; Defendants do not argue, nor does the record support, that AFMS is "a membership organization of health professionals in the District of Columbia having as a purpose the maintenance of high professional standards within the profession practiced by its members," D.C. Code § 44-801(4). Defendants do urge, on the other hand, that AFMS is a group practice. But this effort too falters before long.

Section 44-801 defines "group practice" as "a collection of health professionals that provides health-care services." *Id.* § 44-801(1). Upon citing this superficially appealing definition of a group practice, Defendants blithely assert that "[AFMS's] description of its operations to support the Air Force physicians in delivering care to millions of patients around the world fits within that definition." Defs.' Mem. at 9, 13. Yet, Defendants fail to trace each element of the definition of group practice, in particular the meaning of "health professional."

14

Only "a person required to be licensed or permitted to provide health-care services *in the District of Columbia* under *Chapter 12 of Title 3*" qualifies as a "health professional," absent an irrelevant exception. D.C. Code § 44-801(3) (emphasis added) (also recognizing circumstances in which Fire and Emergency Medical Services Department personnel can qualify). Chapter 12 of Title 3 provides in pertinent part that "[a] license issued pursuant to this chapter is required to practice . . . medicine . . . in the District, except as otherwise provided in this chapter." *Id.* § 3-1205.01(a)(1). One of the statutory exemptions may be relevant: "The provisions of this chapter prohibiting the practice of a health occupation without a District of Columbia license . . . shall not apply . . . (2) To an individual employed in the District by the federal government, while he or she is acting in the official discharge of the duties of employment." *Id.* § 3-1205.02(a)(2).

Defendants have not shown that AFMS is a collection of people who are required to be licensed or permitted to provide health-care services in the District of Columbia under Chapter 12 of Title 3. Even if Plaintiff herself met the statutory definition of a health professional, Defendants would need to supply evidence that AFMS consists of a *collection* of such health professionals. There is no evidence in the record of any other qualifying health professionals that could support Defendants' claim that AFMS is a group practice under Section 44-801.

Because Defendants have not shown that AFMS falls within any of the subcategories in the Category 2 definition of a peer review body, and because Categories 1 and 3 plainly do not apply, the Court concludes that AFMS is not a peer review body.

   2. *Physician Education Branch and/or Its Chief*

Since Defendants have not established that AFMS falls within any of the three Categories under Section 44-801(6), the Physician Education Branch cannot satisfy Category 1. It cannot be a qualifying "committee, board, hearing panel or officer, reviewing panel or officer or governing

15

board" if the entity of which it is part—AFMS—does not qualify as "a health-care facility or agency, group practice or health professional association." Accordingly, Defendants must be able to establish that the Physician Education Branch stands on its own as a Category 2 entity, or that its chief is a Category 3 individual. Defendants cannot do either.

Perhaps the best chance for the Physician Education Branch to qualify as a Category 2 entity would be the "group practice" subcategory. But Col. Grau's testimony suggests that the Physician Education Branch consisted of only one physician. *See* Defs.' Mem., Ex. 3, ECF No. 86-5 (Dep. of Col. Thomas C. Grau at 18:17-19:1). Although his testimony raises the possibility that other physicians joined the office later, the parties have not pointed to, nor has the Court independently come across, any evidence in the record of other physicians simultaneously in the office. Even if there were such other physicians at some relevant time, they still would need to qualify as health professionals within the statutory definition, which the record does not support either. Accordingly, the Physician Education Branch is not a collection of health professionals that could constitute a group practice.

Nowhere do Defendants claim that the Physician Education Branch is a "hospital," or that it should qualify as some variant of this or another Section 44-501 entity. Accordingly, the Court finds that the Physician Education Branch is not a "health-care facility or agency." Nor, for that matter, would it be plausible on this record to find that the Physician Education Branch is a "health professional association." The Physician Education Branch does not satisfy Category 2.

Where the Physician Education Branch does not meet the definition of a Category 2 entity, its chief cannot qualify as a Category 3 individual. *See Ervin*, 445 F. Supp. 2d at 26, 27 (construing officials "of such an entity" in Section 44-801(6) to refer to Category 2 entity). Because Col. Grau, and then Col. Tankersley, was chief of an entity that does not qualify as a "health-care facility,

agency, group practice or health professional association," neither of them satisfies the definition of a peer review body under Section 44-801(6).

### 3. *Air Force Centralized Credentialing Verification Office*

Defendants' attempt to prove that AFCCVO qualifies as a peer review body fails for much the same reasons as the Physician Education Branch falls short. AFMS is not a Category 2 entity, so AFCCVO cannot be a Category 1 entity. Although Defendants refer to the efforts of Col. Tankersley and a subordinate to advance AFCCVO's information gathering, Defs.' Mem. at 14, Defendants do not specifically claim that an individual person within AFCCVO satisfies Category 3. Even if they had so claimed, the ability of an individual to so qualify would turn on whether Defendants could prove that AFCCVO qualifies as a Category 2 entity in its own right.

This they cannot do, for Defendants have not shown that AFCCVO satisfies the relevant statutory definitions that this Court expounded above. Defendants have not shown that AFCCVO is either a collection of health professionals constituting a group practice; a hospital, recognized variant thereof, or other entity qualifying as a health-care facility or agency; or a health professional association. *See, e.g.*, Defs.' Reply at 7 n.7 (arguing that AFCCVO "serves as a clearinghouse for hospitals and other Medical Treatment Facilities which rely upon it as their one-stop source for reviewing the 'primary source verification' for the credentials of any military physician (including Plaintiff) who applies for privileges to treat patients"). There is no evidence in the record that AFCCVO is a Category 2 entity, and consequently, it does not qualify as a peer review body.

\*\*\*

Because Defendants have not established that any of the relevant U.S. Air Force entities qualifies as a peer review body under Section 44-801(6), Defendants are not entitled to immunity

17

under the peer review privilege of Section 44-802.  Because the peer review privilege does not apply, the Court need not reach Defendants' argument about the burden Plaintiff must discharge to prove her intentional defamation claim.  *See, e.g.*, Defs.' Mem. at 15-16; *see Burns II*, 873 F.3d at 296 (indicating that burden would change "if the peer review statute does apply").  Nor need the Court address any of the parties' other arguments.

## IV. CONCLUSION

For all of the foregoing reasons, the Court shall **DENY** Defendants' [86] Joint Motion for Partial Summary Judgment as to the Applicability of the District of Columbia Peer Review Act to Plaintiff's Counts of Defamation.  Plaintiff's negligent defamation claim must continue to trial along with her other remaining claim of intentional defamation.

An appropriate Order accompanies this Memorandum Opinion.

Dated:  March 14, 2019

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge