**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ANTOINETTE BURNS,
         Plaintiff,

         v.                                    Civil Action No. 13-898 (CKK)

MATTHEW D. LEVY, *et al.*,
         Defendants.

**MEMORANDUM OPINION**
(December 2, 2019)

Plaintiff Lt. Col. Antoinette Burns sued Defendants MedStar Georgetown University Hospital and Matthew D. Levy, M.D., and former Defendant Georgetown University Medical Center, on various grounds relating to her participation in and exit from the MGUH Community Pediatrics and Child Advocacy Fellowship Program. Lt. Col. Burns originally alleged various claims against the Defendants, including breach of contract and defamation claims. This Court previously granted summary judgment to the Hospital and Dr. Levy on the breach of contract claims, which the Court of Appeals affirmed.

The Court of Appeals, however, did not affirm the Court's grant of summary judgment on Lt. Col. Burns's defamation claims and remanded at least a subset of those claims. Consequently, at issue between the parties now is the scope of the mandate on remand from the Court of Appeals. Also pending before the Court are the parties' other pretrial filings. How the Court rules on a few major objections and motions *in limine* may significantly impact the parties' positions with respect to numerous others. Accordingly, the Court considers several categories of disputes between the parties in this Memorandum Opinion and the accompanying Order by ruling on the Defendants'

motions *in limine* and on Lt. Col. Burns's objection to Defendants' invocation of the common interest privilege.

## I. OVERVIEW

This Memorandum Opinion considers six broad categories of issues raised by the parties' pretrial briefing. First, upon consideration of the relevant briefing,[1] legal authorities, and record, the Court **GRANTS IN PART**, **DENIES IN PART**, and **DENIES WITHOUT PREJUDICE IN PART** Defendants' Motion *in Limine* to Exclude Proposed Testimony and Evidence on Subjects that Are Not Relevant and Would Be Confusing, Irrelevant, Misleading, and Unfairly Prejudicial. In their motion, Defendants argue that two broad categories of evidence should be excluded. The Court concludes that the findings of the Court of Appeals, and its affirmation of this Court's grant of summary judgment on the contract claims, limits the evidence that Lt. Col. Burns can introduce at trial. However, the Court disagrees that the Court of Appeals limited its remand of the

---

[1] For this Motion, the Court's consideration has focused on the following:
- Joint Pretrial Statement ("Joint Pretrial Stmt."), ECF No. 93;
- Defendants' Points and Authorities in Support of their Objections to Portions of the Joint Pretrial Statement and in Response to Plaintiff's Objections to the Joint Pretrial Statement ("Defs.' Combined Pretrial Stmt. Objs. and Resp."), ECF No. 93-1;
- Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Objections to the Joint Pretrial Statement ("Pl.'s Pretrial Stmt. Opp'n"), ECF No. 93-2;
- Defendants' Motion *in Limine* to Exclude Proposed Testimony and Evidence on Subjects That Are Not Relevant and Would Be Confusing, Irrelevant, Misleading, and Unfairly Prejudicial ("Defs.' Mot. to Exclude Certain Contract and Defamation Evid."), ECF No. 100;
- Plaintiff's Omnibus Opposition to Defendant's Five Motions *in Limine* ("Pl.'s Omnibus Opp'n"), ECF No. 105; and
- Defendants' Reply to Plaintiff's Omnibus Opposition to Their Motions *in Limine* and Response to Her Proffer of Evidence ("Defs.' Reply to Pl.'s Omnibus Opp'n"), ECF No. 107.

In an exercise of its discretion, the Court finds that holding oral argument for these motions would not be of assistance in rendering a decision. *See* LCvR 7(f).

defamation claims as narrowly as Defendants contend. Still, much of the evidence that Lt. Col. Burns wants to offer should be excluded, as the Court outlines below.

Second, the Court **DENIES** Lt. Col. Burns's request that the Court find that the common interest privilege does not apply to the communications at issue.[2] Under the law-of-the-case doctrine and mandate rule, the Court follows its prior conclusion from the first round of summary judgment briefing that the common interest privilege applies. Even if the Court were not obligated to follow its prior ruling, the common interest privilege still applies. This, however, does not preclude Lt. Col. Burns from arguing at trial that the privilege was abused, such as by a showing of malice (including falsity).

Third, the Court **DENIES WITHOUT PREJUDICE** Defendants' Motion *in Limine* to Exclude Witnesses Not Disclosed or Identified as Such by Plaintiff in Her Rule 26 Disclosures or Discovery.[3] The parties have provided insufficient information regarding whether there has been a violation of the relevant rules, whether any violation was harmless, and as to which particular remedy is warranted. Consequently, the Court will require the parties to file supplemental briefing on the issues outlined below and in the accompanying Order.

---

[2] For this issue, the Court's consideration has focused on the following:
- Joint Pretrial Stmt., ECF No. 93;
- Defs.' Combined Pretrial Stmt. Objs. and Resp., ECF No. 93-1;
- Pl.'s Pretrial Stmt. Opp'n, ECF No. 93-2; and
- Pl.'s Omnibus Opp'n, ECF No. 105.

[3] For this Motion, the Court's consideration has focused on the following:
- Joint Pretrial Stmt., ECF No. 93;
- Defs.' Combined Pretrial Stmt. Objs. and Resp., ECF No. 93-1;
- Pl.'s Pretrial Stmt. Opp'n, ECF No. 93-2;
- Defendants' Motion *in Limine* to Exclude Witnesses Not Disclosed or Identified as Such by Plaintiff in Her Rule 26 Disclosures or Discovery ("Defs.' Mot. to Exclude Certain Undisclosed Witnesses"), ECF No. 97;
- Pl.'s Omnibus Opp'n, ECF No. 105; and
- Defs.' Reply to Pl.'s Omnibus Opp'n, ECF No. 107.

Fourth, the Court **GRANTS IN PART** and **DENIES WITHOUT PREJUDICE IN PART**

Defendants' Motion *in Limine* to Exclude Proposed Testimony and Reports of Plaintiff's Expert

Witness, Dr. Gregory Scott Blaschke.[4]  In accordance with the Court's conclusions elsewhere in

the Memorandum Opinion that certain evidence related to Lt. Col. Burns's dismissed contract

claims should be excluded, the Court finds that certain of Dr. Blaschke's testimony should

similarly be excluded.  The parties' submissions, however, are not sufficient for the Court to

determine whether any of Dr. Blaschke's anticipated testimony should be excluded under Federal

Rules of Evidence 702 and 703.  The Court will accordingly require the parties to file supplemental

briefing on the issues outlined below and in the accompanying Order.

Fifth, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion *in

Limine* to Exclude Damages Evidence for Loss of Income and Attorneys' Fees, and to Strike

Plaintiff's Claim for Attorneys' Fees.[5]  The Court agrees with Defendants that evidence relating to

lost income damages should be excluded and grants that portion of its Motion.  The Court further

---

[4] For this Motion, the Court's consideration has focused on the following:
- Joint Pretrial Stmt., ECF No. 93;
- Defs.' Combined Pretrial Stmt. Objs. and Resp., ECF No. 93-1;
- Pl.'s Pretrial Stmt. Opp'n, ECF No. 93-2;
- Defendants' Motion *in Limine* to Exclude Proposed Testimony and Reports of Plaintiff's Expert Witness, Dr. Gregory Scott Blaschke ("Defs.' Mot. to Exclude Expert Test."), ECF No. 99;
- Pl.'s Omnibus Opp'n, ECF No. 105; and
- Defs.' Reply to Pl.'s Omnibus Opp'n, ECF No. 107.

[5] For this Motion, the Court's consideration has focused on:
- Joint Pretrial Stmt., ECF No. 93;
- Defs.' Combined Pretrial Stmt. Objs. and Resp., ECF No. 93-1;
- Pl.'s Pretrial Stmt. Opp'n, ECF No. 93-2;
- Defendants' Motion *in Limine* to Exclude Damages Evidence for Loss of Income and Attorneys' Fees, and to Strike Plaintiff's Claim for Attorneys' Fees ("Defs.' Mot. to Exclude Damages Evid."), ECF No. 96;
- Pl.'s Omnibus Opp'n, ECF No. 105; and
- Defs.' Reply to Pl.'s Omnibus Opp'n, ECF No. 107.

grants Defendants' request to strike Lt. Col. Burns's request for attorneys' fees, as she cannot recover them in this case, but it denies Defendants' Motion to the extent that it seeks to exclude all evidence of attorneys' fees. Lt. Col. Burns is not precluded from introducing, at the appropriate juncture, limited evidence regarding attorneys' fees because it is relevant to computing punitive damages under District of Columbia law. The Court, however, limits the scope of attorneys' fees for which evidence may be introduced.

Lastly, the Court **GRANTS IN PART, DENIES IN PART**, and **DENIES WITHOUT PREJUDICE IN PART** Defendants' Motion *in Limine* to Exclude Documents Not Identified as Required by the Court's Pretrial Scheduling and Procedures Order or Previously Produced During Discovery.[6] The Court denies Defendants' request to completely exclude fifteen exhibits, grants the portion of their Motion seeking to exclude ten exhibits relating to Lt. Col. Burns's damages, and denies without prejudice their Motion to the extent that it seeks to exclude Exhibit 65. If Defendants want to move to exclude Exhibit 65 again, the Court will require additional submissions from the parties as outlined below and in the accompanying Order.

---

[6] For this Motion, the Court's consideration has focused on:
- Joint Pretrial Stmt., ECF No. 93;
- Defs.' Combined Pretrial Stmt. Objs. and Resp., ECF No. 93-1;
- Pl.'s Pretrial Stmt. Opp'n, ECF No. 93-2;
- Defendants' Supplemental Points and Authorities in Support of Their Objections to Portions of the Joint Pretrial Statement and in Response to Plaintiff's Objections to the Joint Pretrial Statement ("Defs.' Suppl. Objs. to Joint Pretrial Stmt."), ECF No. 94;
- Plaintiff's Response to Defendants' Supplemental Memorandum of Points and Authorities ("Pl.'s Resp. to Defs.' Suppl. Objs."), ECF No. 101;
- Defendants' Motion *in Limine* to Exclude Documents Not Identified as Required by the Court's Pretrial Scheduling and Procedures Order or Previously Produced During Discovery ("Defs.' Mot. to Exclude Certain Exs."), ECF No. 98;
- Pl.'s Omnibus Opp'n, ECF No. 105; and
- Defs.' Reply to Pl.'s Omnibus Opp'n, ECF No. 107.

## II. BACKGROUND

This Court examined the facts of this case in its prior summary judgment rulings, to which it refers the reader. *See Burns v. Levy*, 373 F. Supp. 3d 149, 151–52 (D.D.C. 2019) ("*Burns III*"); *see Burns v. Georgetown Univ. Med. Ctr.*, Civil Action No. 13-898 (CKK), 2016 WL 4275585, at *2–*6 (D.D.C. Aug. 12, 2016) ("*Burns I*"). In short, in this lawsuit, Lt. Col. Burns pursued contract-based claims, defamation claims, and a claim of intentional interference with prospective economic advantage against a combination of the Hospital, the University, and Dr. Levy. Second Am. Compl., ECF No. 26. The Court granted summary judgment for all three Defendants as to all claims and dismissed Plaintiff's case. *See Burns I*, 2016 WL 4275585. On appeal, the D.C. Circuit affirmed dismissal of all but the defamation claims, as to which it reversed and remanded to this Court for certain further determinations. *See Burns v. Levy*, 873 F.3d 289 (D.C. Cir. 2017) ("*Burns II*"). The parties now dispute the scope of the D.C. Circuit's remand and the impact that its findings have on what evidence may be introduced at trial.

## III. LEGAL STANDARD

Although neither the Federal Rules of Civil Procedure nor the Federal Rules of Evidence explicitly authorize motions *in limine*, "the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). In fact, under Federal Rule of Evidence 103, the court must "conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means" to the extent practicable. Fed. R. Evid. 103(d). "Pretrial motions *in limine* are an important mechanism to effectuate this goal of insulating the jury from inadmissible evidence," *United States v. Bikundi*, No. 14-CR-030 (BAH), 2015 WL 5915481, at *3 (D.D.C. Oct. 7, 2015), and are "designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions," *Bradley v. Pittsburgh Bd. of Educ.*,

913 F.2d 1064, 1069 (3d Cir. 1990). *See United States v. Jackson*, 627 F.2d 1198, 1209 (D.C. Cir. 1980) ("A pre-trial ruling, if possible, may generally be the better practice, for it permits counsel to make the necessary strategic determinations.").

Motions *in limine* are therefore understandably intended to deal with discrete evidentiary issues and are not another opportunity to file disguised dispositive motions. *Dunn ex rel. Albery v. State Farm Mut. Auto. Ins. Co.*, 264 F.R.D. 266, 274 (E.D. Mich. 2009). In light of this limited purpose, motions *in limine* "should not be used to resolve factual disputes or weigh evidence," which remains the "function of a motion for summary judgment, with its accompanying and crucial procedural safeguards." *C & E Servs., Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008). Factual questions, in other words, "should not be resolved through motions in limine," *Goldman v. Healthcare Mgmt. Sys., Inc.*, 559 F. Supp. 2d 853, 871 (W.D. Mich. 2008), nor is a motion *in limine* a "vehicle for a party to ask the Court to weigh the sufficiency of the evidence," *Bowers v. Nat'l Collegiate Athletic Ass'n*, 563 F. Supp. 2d 508, 532 (D.N.J. 2008).

Due to the trial court's "familiarity with the details of the case and its greater experience in evidentiary matters," it is "'accorded a wide discretion in determining the admissibility of evidence under the Federal Rules.'" *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008) (quoting *United States v. Abel*, 469 U.S. 45, 54 (1984)). When a motion *in limine* relates to the admissibility of evidence on relevance grounds, the court must determine whether the evidence is relevant under Federal Rule of Evidence 401 or otherwise inadmissible under Rule 403. This assessment of "the probative value" of the evidence and "weighing any factors counseling against admissibility is a matter first for the district court's sound judgment." *Id.* (internal quotation marks omitted) (quoting *Abel*, 469 U.S. at 54). "This is particularly true with respect to Rule 403 since it requires an 'on-the-spot balancing of probative value and prejudice,

potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant.'" *Id.* (quoting 1 S. Childress & M. Davis, Federal Standards of Review § 4.02, at 4–16 (3d ed.1999)).

Under Rule 401, the bar for relevance is low: Evidence is relevant if it tends to make a fact of consequence more or less probable than without that evidence, Fed. R. Evid. 401, provided that it is not otherwise excluded under the Rules, the Constitution of the United States, or an Act of Congress, Fed. R. Evid. 402. Moreover, even when evidence is relevant, the court may exclude it under Rule 403 on several grounds, including "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. In this context, unfair prejudice "'means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *United States v. Ring*, 706 F.3d 460, 472 (D.C. Cir. 2013) (quoting Advisory Committee's Note, Fed. R. Evid. 403).

The trial judge's discretion extends not only to the substantive evidentiary ruling, but also to the threshold question of whether a motion *in limine* presents an evidentiary issue that is appropriate for ruling in advance of trial. *United States v. Valencia*, 826 F.2d 169, 172 (2d Cir. 1987); *see Rosemann v. Roto–Die, Inc.*, 377 F.3d 897, 902 (8th Cir. 2004); *United States v. Layton*, 720 F.2d 548, 553 (9th Cir. 1983), *cert. denied*, 465 U.S. 1069 (1984), *and overruled on other grounds by United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008). The trial judge has the "discretion to rule in limine or to await developments at trial before ruling." Stephen A. Saltzburg et al., Federal Rules of Evidence Manual § 103.02[13] (9th ed. 2006). "[I]n some instances it is best to defer rulings until trial, where decisions can be better informed by the context, foundation,

and relevance of the contested evidence within the framework of the trial as a whole." *Casares v. Bernal*, 790 F. Supp. 2d 769, 775 (N.D. Ill. 2011).

## IV. DISCUSSION

In their pretrial filings, the parties have included numerous objections and motions *in limine*. The parties' disputes primarily fall into a few broad categories, most of which are also raised by Defendants' motions *in limine*. Lt. Col. Burns further requests that the Court decide whether the qualified common interest privilege applies to the Hospital and Dr. Levy's statements. Resolution of this question and the motions *in limine* will address many of the parties' objections and may substantially affect the parties' pretrial filings and strategy. The Court therefore considers these major disputes below.

A. Defendants' Motion *in Limine* to Exclude Certain Contract and Defamation Evidence

Defendants contend that in light of the D.C. Circuit's decision, evidence related to Lt. Col. Burns's dismissed contract claims, including her "one fellowship" theory, and to Lt. Col. Burns's defamation claim based on the contents of the Final Summative Assessment ("FSA") is irrelevant or otherwise inadmissible and should be excluded under Federal Rules of Evidence 401 and 403. *See* Defs.' Mot. to Exclude Certain Contract and Defamation Evid. In response, Lt. Col. Burns suggests that dismissal of her contract claims has no effect on her ability to introduce certain evidence related to the fellowship. She further argues that the Court of Appeals remanded the entirety of her defamation claims and contests the narrow reading of the mandate that Defendants propose. *See* Pl.'s Omnibus Opp'n at 14–18; Pl.'s Pretrial Stmt. Opp'n at 2–4, 7–9.

Defendants are mistaken about the scope of the mandate from the Court of Appeals. It reversed and remanded *all* of Lt. Col. Burns's defamation claims, not just the two facets of those claims that it discussed in more depth in its opinion. However, the Hospital and Dr. Levy are

correct that much of the evidence Lt. Col. Burns wants to introduce is either irrelevant on remand or is otherwise inadmissible.

### 1. The Scope of the Mandate on Remand

The parties contest exactly which claims or factual determinations the Court of Appeals remanded to this Court. In their Motion *in Limine*, the Hospital and Dr. Levy argue that only one of Lt. Col. Burns's defamation theories was remanded under the mandate rule: "whether the statements that [Lt. Col. Burns] was dismissed from the Program are defamatory, and not any other statements made in the FSA." Defs.' Mot. to Exclude Certain Contract and Defamation Evid. at 15. To the contrary, Lt. Col. Burns argues that while the Court of Appeals made some specific findings, it remanded all her defamation claims. Pl.'s Pretrial Stmt. Opp'n at 2. This Court agrees that the remand is not so narrow as the Hospital and Dr. Levy claim.

Under the mandate rule, this Court cannot deviate from the mandate issued by the Court of Appeals for the District of Columbia Circuit. *See Indep. Petroleum Ass'n of Am. v. Babbitt*, 235 F.3d 588, 596–97 (D.C. Cir. 2001) ("Under the mandate rule, 'an inferior court has no power or authority to deviate from the mandate issued by an appellate court.'" (quoting *Briggs v. Pa. R.R. Co.*, 334 U.S. 304, 306 (1948))). "The mandate rule is a 'more powerful version' of the law-of-the-case doctrine, which prevents courts from reconsidering issues that have already been decided in the same case." *Id.* (quoting *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 & n.3 (D.C. Cir. 1996) (en banc)). This doctrine, however, "does not seek to sweep under its coverage all possible issues arising out of the facts of the case." *United States ex rel. Dep't of Labor v. Ins. Co. of N. Am.*, 131 F.3d 1037, 1041 (D.C. Cir. 1997). Instead, it "is limited to issues that were decided either explicitly or by necessary implication," and "'[t]he mere fact that [an issue] could have been decided is not sufficient to foreclose the issue on remand.'" *Id.* (quoting *Maggard v. O'Connell*,

703 F.2d 1284, 1289 (D.C. Cir. 1983)). To interpret the mandate, this Court must consider the D.C. Circuit's opinion. *See id.* at 1041 n.7 ("[I]t is entirely appropriate—and, in most cases in this circuit, necessary—to consult the opinion to interpret the mandate.").

In its opinion, the Court of Appeals reversed this Court's grant of summary judgment, finding that "[t]he record reveals enough of a dispute of fact to preclude summary judgment." *Burns II*, 873 F.3d at 295. The opinion focused on Lt. Col. Burns's claim that the hospital defamed her "by its telling the Air Force she had been" fired from the Hospital. *Id.* It identified two relevant disputed issues. First, it was disputed on the record whether the statement that Lt. Col. Burns was dismissed for cause was false. Second, if it was false, it was disputed whether Hospital personnel knew or should have known of its falsity. *See id.* at 295–96. The Court of Appeals ultimately explained that:

> Because a reasonable jury could find (1) that the reports by Levy and the Hospital that Burns was fired were false statements, and (2) that the statements were made with the requisite knowledge or notice of their falsity (depending on the applicability of the peer review statute), **we reverse the district court on Burns's defamation claims and remand for further proceedings.**

*Id.* at 297 (emphasis added).

The Hospital and Dr. Levy therefore contend that because the Court of Appeals did not explicitly reverse this Court's finding that the common interest privilege barred Lt. Col. Burns's defamation claim based on the FSA, and instead focused on those two disputed issues, whether the FSA was defamatory is no longer at issue. *See* Defs.' Combined Pretrial Stmt. Objs. and Resp. at 4–5; Defs.' Mot. to Exclude Certain Contract and Defamation Evid. at 15–16. Defendants are mistaken.

While the Court of Appeals focused on those two disputed issues, it never explicitly affirmed this Court's grant of summary judgment to Defendants with respect to the FSA. For a court to be bound by a mandate, "the issue must actually have been decided 'either expressly or

by necessary implication' on that appeal." *Maggard*, 703 F.2d at 1289 (quoting *Cleveland v. Fed. Power Comm'n*, 561 F.2d 344, 348 (D.C. Cir. 1977)). "The mere fact that it could have been decided is not sufficient to foreclose the issue on remand." *Id.* Although the Court of Appeals could have reached the issue of whether Lt. Col. Burns's other defamation claims were properly decided on summary judgment, it did not do so. Consequently, the Court is not bound by any *sub silentio* affirmation, contrary to what the Hospital and Dr. Levy claim.

Instead, the Court of Appeals merely identified at least two issues precluding the grant of summary judgment without affirming any of this Court's findings on Lt. Col. Burns's defamation claims. It further explicitly stated that it reversed this Court "on Burn's defamation claims" without narrowing the scope of that reversal on remand. *Burns II*, 873 F.3d at 297. And when "a Court of Appeals reverses a grant of summary judgment by finding genuine disputes as to material facts," which is what happened here, "remand to the district court effectively 'restarts' the litigation in the district court." *Corrigan v. Glover*, 254 F. Supp. 3d 184, 199 (D.D.C. 2017), *appeal dismissed*, No. 17-7099, 2017 WL 6945808 (D.C. Cir. Dec. 20, 2017). Its remand therefore included all of Lt. Col. Burns's defamation claims, including even those that the opinion did not discuss at length.

Accordingly, the Court denies the portion of the Hospital and Dr. Levy's Motion seeking to exclude evidence related to Lt. Col. Burns's defamation claim based on the FSA. However, as the Court explains in more detail below, *see infra* Section IV.B (discussing applicability of common interest privilege on remand), the common interest privilege still protects the Hospital and Dr. Levy's statements under the law-of-the-case doctrine and mandate rule. The remaining issues on remand, then, involve whether Lt. Col. Burns can overcome the privilege's protection for each of her defamation claims—including her claim premised on the FSA's contents.

*2. The Effect of Dismissing Lt. Col. Burns's Contract Claims*

The Court of Appeals affirmed the grant of summary judgment to the Hospital and Dr. Levy on Lt. Col. Burns's original contract claims. *Burns II*, 873 F.3d at 293–95. In doing so, it rejected Lt. Col. Burns's single-fellowship theory that "she accepted one fellowship with multiple parts," and that she resigned from that one fellowship. *Id.* at 293. Ultimately, the "unambiguous words of the contracts at issue" were "fatal to all of her arguments." *Id.* at 294. Now, on remand, Lt. Col. Burns has indicated that she plans to introduce certain evidence that the Hospital and Dr. Levy claim were largely related to her dismissed contract claims. This evidence, Defendants argue, is either irrelevant or otherwise inadmissible.

Lt. Col. Burns disagrees. She claims that *all* this evidence still remains relevant to her defamation claims because "the dismissal of the contract claims has no impact on this evidence." Pl.'s Omnibus Opp'n at 16. She argues that this evidence relating to, among other things, the contractual relationships between the parties, the parties' expectations about the fellowships, and the working relationship between Lt. Col. Burns and Dr. Levy is relevant because it goes to "the state of mind of Dr. Levy and Jamie Padmore" for the negligent and intentional defamation claims. Pl.'s Pretrial Stmt. Opp'n at 7–8. Lt. Col. Burns also contends that this evidence goes toward her demonstration of malice to overcome the common interest privilege that otherwise shields the statements at issue. *Id.* at 8; *see also infra* Section IV.B (discussing applicability of common interest privilege).

Lt. Col. Burns is correct that the mental state of the parties is a fact of consequence for her claims. To satisfy the requirements for defamation under District of Columbia law, she must prove "(1) that [she] was the subject of a false and defamatory statement; (2) that the statement was published to a third party; (3) that publishing the statement was at least negligent; and (4) that [she]

suffered either actual or legal harm." *Farah v. Esquire Magazine*, 736 F.3d 528, 533–34 (D.C. Cir. 2013). Lt. Col. Burns may also attempt to overcome the common interest privilege at trial by demonstrating malice. *See Columbia First Bank v. Ferguson*, 665 A.2d 650, 656 (D.C. 1995) ("'The qualified privilege is a complete defense to libel, but the defense is lost by the showing of malice.'" (quoting *Mosrie v. Trussell*, 467 A.2d 475, 477 (D.C. 1983))). The mental state of Dr. Levy and other Hospital personnel is relevant, then, to her arguments. What is less clear is whether *all* the contested evidence makes it more or less probable that Defendants had, or did not have, the requisite mental states.

Defendants further argue that even if any of the evidence they challenged is relevant, considering that Lt. Col. Burns's contract claims have been dismissed, "introduction of any testimony or evidence regarding her impressions or understandings of which entity she had a contract with, the nature or quality of the Program, [or] the structure of the Program" will cause confusion, waste time, unduly delay the trial, and unfairly prejudice Defendants. Defs.' Mot. to Exclude Certain Contract and Defamation Evid. at 14. According to Defendants, much of the proposed testimony should be excluded on those grounds.

Lt. Col. Burns responds only summarily to Defendants' arguments in this vein, stating that "the probative nature of the evidence is substantially outweighed by any prejudice to the Defendants, because the Hospital and Dr. Levy have shown no prejudice." Pl.'s Pretrial Stmt. Opp'n at 9. She does not address, in either her original Pretrial Objections or her Omnibus Opposition to Defendants' Motions *in Limine*, Defendants' arguments regarding the dangers of confusing or misleading the jury about the issues. Those arguments are therefore conceded. *See Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014) ("[I]f a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the

unaddressed arguments as conceded."); *see also* Pretrial Scheduling and Procedures Order, ECF No. 92, at 5 ("Similarly, where a party fails to respond to arguments in opposition papers, the Court may treat those specific arguments as conceded. *Phrasavang v. Deutsche Bank*, 656 F. Supp. 2d 196, 201 (D.D.C. 2009).").

Despite this concession, the Court examines the parties' arguments at length below. As some of the discussions and rulings in this Memorandum Opinion will undoubtedly impact the parties' arguments and motions *in limine*, the Court focuses here on Defendants' objections under Rules 401 and 403. To the extent that Defendants' objections on other grounds are not mooted by the Court's determinations in this Memorandum Opinion and the accompanying Order, they are denied without prejudice to enable Defendants to consider whether they are still relevant and whether they want to raise them in relation to the revised Joint Pretrial Statement.

### i. Dr. Levy's Testimony in Exhibits A and B

Defendants first challenge, as irrelevant or otherwise inadmissible, two portions of Dr. Levy's deposition testimony, which they attached to their Motion as Exhibits A and B. The Court disagrees that all the excerpted portions of Dr. Levy's testimony are now irrelevant. Most of the testimony is probative with respect to disputed issues specifically identified by the Court of Appeals in *Burns II*, such as the timing of Lt. Col. Burns's dismissal and whether Dr. Levy acted with malice. *See, e.g.*, *Burns II*, 873 F.3d at 295 ("Whether the statement was false, and whether Hospital personnel knew or should have known of its falsity, is disputed on the present record.").

Consider the testimony excerpted in Exhibit A. This discussion is relevant to at least two disputed issues identified by the Court of Appeals. For example, Dr. Levy discusses the timing of Lt. Col. Burns's dismissal, Defs.' Mot. to Exclude Certain Contract and Defamation Evid. Ex. A at 46–47, and the method by which he believed that he dismissed Lt. Col. Burns, *id.*, both of which

are probative when it comes to the timing dispute noted by the Court of Appeals. *See Burns II*, 873 F.3d at 296 ("Considering the University's stated intent to treat Lt. Col. Burns's withdrawal effective as of April 3, a reasonable jury could decide that Lt. Col. Burns terminated her University fellowship agreement on April 3 or December 11, and that either termination was prior to the Hospital's attempt to dismiss her.").

What is more, the testimony sheds light on Dr. Levy's understanding of the fellowship structure and his knowledge of the underlying contracts. He explains that he knew he'd seen "documents evidencing Colonel Burns entering into a research fellowship with the university," Defs.' Mot. to Exclude Certain Contract and Defamation Evid. Ex. A at 50:16–51:7, but that he was not involved in the university fellowship negotiation process, *id.* Ex. A at 51:8–52:2. On the one hand, Dr. Levy's review or recollection of any such documents tends to make it more probable that he was aware that, if the University terminated its fellowship first, he and the Hospital lacked any authority to dismiss Lt. Col. Burns. On the other hand, Dr. Levy's noninvolvement in the university fellowship process and lack of memory as to the details of the university program tend to make it more probable that he did not have that knowledge. This testimony is therefore probative.

The same is true of the deposition testimony excerpted in Exhibit B. In this testimony, Dr. Levy discusses his knowledge of Lt. Col. Burns's negotiated resignation from the university fellowship, *see, e.g.*, *id.* Ex. B at 65:7–66:7, and when he learned that the two fellowships were distinct, *see, e.g.*, *id.* Ex. B at 67:1–68:13; *id.* Ex. B at 70:14–71:3. These lines of testimony, along with others in this portion, similarly relate to Dr. Levy's mental state and knowledge of the underlying fellowship structure and contractual relationships. Accordingly, to the extent that the testimony about the fellowships challenged by Dr. Levy and the Hospital sheds light on the mental

state of Dr. Levy or the Hospital in publishing the allegedly defamatory statements or the disputed issues identified by the Court of Appeals, the designated testimony is relevant.

The probative value of Dr. Levy's testimony in Exhibits A and B, moreover, outweighs the risks of confusion and prejudice that Defendants claim will occur. It is true that, at times, the deposition transcript is difficult to follow. Counsel for Lt. Col. Burns did not make this any easier, as his questions sometimes appear argumentative or duplicative. *See, e.g.*, *id.* Ex. A at 47:17–19 ("Q. I don't want to say that. I don't think it's true. Do you think it's true?"). But, contrary to Defendants' assertions, much of the challenged deposition testimony speaks directly to Dr. Levy's understanding of the fellowships' formal structure and other disputed issues. His answers regarding when he found out about the distinct nature of the two fellowships, *see, e.g.*, *id.* Ex. B at 70:14–71:3, for instance, explicitly relates to the disputed timing issue that the Court of Appeals discussed.

Overall, there is a close nexus between this testimony and the mental state of Dr. Levy and other Hospital personnel, Dr. Levy's knowledge of Lt. Col. Burns's negotiated withdrawal, and Dr. Levy and the Hospital's understanding of the contractual rights underpinning the fellowships— all of which are issues that directly bear on Lt. Col. Burns's remaining defamation claims. As a result, the majority of this testimony is highly probative and the Court cannot say that its probative value is substantially outweighed by the danger of misleading the jury, confusing the issues, or prejudicing Defendants. The Court accordingly denies the Hospital and Dr. Levy's Motion as to the majority of the testimony.

There are two exceptions, however. In Exhibit A, there comes a point when the questioning becomes argumentative and duplicative and consequently poses a substantial risk of confusion. This begins when counsel for Lt. Col. Burns asks, "Dr. Levy, don't you have them mixed up?" *Id.*

Ex. A at 51:18. From that point forward, counsel questions Dr. Levy about whether he was confused in his description of the fellowships, which Dr. Levy denies. *Id.* at 51:18–52:22. Even if this testimony is slightly probative, the Court agrees with Defendants that this prolonged back-and-forth poses a significant risk of confusing the issues or misleading the jury, which substantially outweighs its slight probative value. The Court grants Defendant's Motion as to this testimony in lines 51:18 through 52:22.

There is a similar turning point in Exhibit B. The line of questioning beginning on page 71, line 7 and ending on page 73, line 22, is substantially more likely to confuse the issues than it is probative. In fact, it is unclear how this testimony sheds light on any of the previously discussed disputed issues. Counsel for Lt. Col. Burns and Dr. Levy primarily retread ground about the terminology of the two fellowships and about the structure of the university fellowship. *See, e.g.*, *id.* Ex. B at 71:18–72:20. Even if this testimony were probative, however, most of it appears calculated toward building Lt. Col. Burns's original contract claims. As a result, it poses a danger of confusing the issues or misleading the jury that substantially outweighs its potential probative value. The Court grants Defendant's Motion as to this testimony in lines 71:7 through 73:22.

### ii. Other Testimony

Dr. Levy and the Hospital also challenge other proposed testimony regarding Lt. Col. Burns's recruitment, expectations for the fellowship, and the nature of the fellowship and whether it complied with certain standards. This includes Exhibit C attached to Defendants' Motion *in Limine*, which is an excerpted portion of Dr. Levy's deposition testimony, as well as the testimony of numerous other witnesses. *See* Defs.' Mot. to Exclude Certain Contract and Defamation Evid. at 7–10. Before considering each portion of challenged testimony, the Court first discusses considerations common to all of them in light of Lt. Col. Burns's contentions. Lt. Col. Burns

argues that all this challenged testimony goes to the mental state of Dr. Levy and the Hospital. *See* Pl.'s Pretrial Stmt. Opp'n at 7–8. Under her theory, this testimony presents circumstances demonstrating that "Dr. Levy was poorly trained, did not follow procedures typical of such a program, and was operating a 'rogue' clinical program," which supports that "Dr. Levy acted with malice." *Id.* at 8–9.

In the context of the common interest privilege, malice is "the equivalent of bad faith." *Moss v. Stockard*, 580 A.2d 1011, 1025 (D.C. 1990). "Malice is defined as 'the doing of an act without just cause or excuse, with such a conscious indifference or reckless disregard as to its results or effects upon the rights or feelings of others as to constitute ill will.'" *Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 859 (D.C. Cir. 2006) (quoting *Moss*, 580 A.2d at 1025). "But even a showing of ill will does not 'forfeit the privilege so long as the *primary* purpose is to further the interest which is entitled to protection.'" *Id.* (quoting *Columbia First Bank*, 665 A.2d at 656).

While it is true that malice can be inferred from the circumstances, *see Alfred A. Altimont, Inc. v. Chatelain, Samperton & Nolan*, 374 A.2d 284, 291 (D.C. 1977), Lt. Col. Burns's proposed nexus between the allegedly "disorganized nature" of the "rogue program" and Dr. Levy's alleged malice is nebulous at best. To begin with, she claims that evidence that the Hospital and Dr. Levy "did not follow proper procedures is relevant in determining malice." Pl.'s Pretrial Stmt. Opp'n at 8. Lt. Col. Burns relies here on *Columbia First Bank v. Ferguson*, 665 A.2d 650 (D.C. 1995), which she contends stands for the analogous proposition that following procedures can undercut a showing of malice. In *Columbia First Bank*, the District of Columbia Court of Appeals found that a bank employee's actions did not rise to the level of malice in part because she viewed her actions as complying with a federal regulation that required the bank to notify law enforcement of certain suspicious activities. *Id.* at 655–56. In that sense, that the employee and bank were thorough and

followed the relevant reporting procedures, such as by spending significant time on drafting and investigating the report, demonstrated that the "primary motive" in reporting the suspicious behavior at issue was "to fulfill what she [the employee] perceived to be her official duties," and not malice. *Id.* at 656–57.

In certain contexts, then, adherence to procedures relevant to publication of the allegedly defamatory statement can certainly undercut a showing of malice. *See, e.g.*, *Mastro*, 447 F.3d at 859 ("The primary purpose behind management's publication of the memoranda was not to sully Mastro's reputation, but to document the events leading to Mastro's dismissal, in conformance with company policy and applicable law."); *Ford Motor Credit Co. v. Holland*, 367 A.2d 1311, 1315–16 (D.C. 1977) (rejecting argument that defendant sent notice of repossession with malice based on its alleged "fail[ure] to comply with the proper procedures" in part because it was required by company policy and "standard procedure to notify the local credit bureau of a repossession"). And sometimes the opposite may be true: failing to adhere to procedures relevant to the statement's publication might, in some circumstances, tend to show that malice was a motivating factor.

This does not mean, however, that the program's adherence or nonadherence to procedures more generally—outside of the dismissal or publication context—is probative. Notably, Lt. Col. Burns does not appear to argue that the procedures mentioned actually applied to the fellowship. *See, e.g.*, Pl.'s Pretrial Stmt. Opp'n at 8 (describing them as "procedures typical of such a program"); Joint Pretrial Stmt. at 12 (discussing testimony about how fellowship ran "outside the University norms for fellowships"). This is a stark difference from *Columbia First Bank*, in which the bank had clear obligations under federal law, and from other cases in which the defendants had applicable policies and standards. If Dr. Levy or the Hospital had no obligation to follow the

guidelines at issue, any noncompliance does little—if anything—to suggest that they had the requisite relevant mental state when publishing the allegedly defamatory statements.

In fact, much of the testimony that Lt. Col. Burns wants to introduce appears unrelated to what was at issue in *Columbia First Bank* and other cases, which were the procedures used to investigate and publish the allegedly defamatory statements. *See Columbia First Bank*, 665 A.2d at 656–57; *Mastro*, 447 F.3d at 859; *Ford Motor Credit*, 367 A.2d at 1315–16. The analogous situation here is the method by which Dr. Levy and the Hospital dismissed Lt. Col. Burns and communicated their statements to the Air Force. Most of the evidence that Defendants move to exclude, however, has nothing to do with that publication or even Lt. Col. Burns's dismissal. For instance, Lt. Col. Burns wants to introduce testimony regarding her own "expectations of the fellowship," the "recruitment" of Lt. Col. Burns and "the disorganized nature of the fellowship," the University's lack of knowledge about the fellowship and how the fellowship "operat[ed] outside the University norms for fellowships," counseling of Dr. Levy "on the procedures of progressive discipline" with respect to Lt. Col. Burns, and the "Air Force's expectations of the program." *See* Joint Pretrial Stmt. at 8–20. It is unclear how this testimony connects to her claims at all. Lt. Col. Burns's theory is that all this testimony is relevant because Dr. Levy had a motive to "cover up his mistake" of "firing Lt. Col. Lt. Col. Burns without any due process or documentation," which goes to whether he had malice. Pl.'s Pretrial Stmt. Opp'n at 9.

Lt. Col. Burns provides no further legal support for her theory, and the theory's application does not withstand much scrutiny. First, much of the challenged testimony does not even appear to be connected to Lt. Col. Burns's theory. For example, her recruitment, her expectations for the fellowship, and the Air Force's expectations for the fellowship shed no light on the mental state possessed by Dr. Levy or other Hospital personnel. They do not tend to make it more or less likely

that Dr. Levy acted with negligence, intent, or malice one way or the other and, as a result, are not probative or relevant. Nor does Lt. Col. Burns explain how these lines of testimony in particular work within her theory. And second, most of the actions that Dr. Levy took during the fellowship are attenuated from the actual publication, and numerous steps are required to connect his actions with the ultimate publication. This casts significant doubt on the probative value of the majority of this testimony.

Even if this challenged testimony were probative under Lt. Col. Burns's theory, Defendants argue, its probative value would be substantially outweighed by the dangers posed of confusing the issues, misleading the jury, or unfair prejudice. As previously noted, while Lt. Col. Burns contests that this testimony would be prejudicial, she has conceded the arguments that it would pose a significant risk of confusing the issues or misleading to the jury. Still, for the sake of thoroughness and clarity, the Court now applies the above generally applicable considerations to specific categories of proposed testimony.

(a) Excerpts of Dr. Levy's deposition testimony in Exhibit C to Defendants' Motion *in Limine*.

Defendants challenge four different sections of this excerpt. The first and fourth segments to which Defendants object are two lines of questioning in which counsel for Lt. Col. Burns questions Dr. Levy about Padmore's knowledge of any intermediate formative assessments completed for Lt. Col. Burns. Defs.' Mot. to Exclude Certain Contract and Defamation Evid. at 7; *id.* Ex. C at 147:11–15; *id.* Ex. C at 151:4–16. The first portion appears to concern formative assessments required by the Accreditation Council for Graduate Medical Education ("ACGME") standards, which, as noted above, Lt. Col. Burns does not necessarily argue even apply here. *Id.* Ex. C at 147:11–15. The same is true of the second discussion. *See, e.g.*, *id.* Ex. C at 151:4–9 ("Do you know now, Dr. Levy, that the preparation of a summative assessment, according to

ACGME guidelines . . . ."). These standards were directly intertwined with Lt. Col. Burns's dismissed contract claims. As previously explained, introducing such arguments would pose a substantial danger that the jury would be confused or misled about the issues. For these reasons, the Court agrees with Defendants that this testimony is irrelevant and that, even if it were not, the danger of confusing or misleading the jury would substantially outweigh its probative value. Accordingly, the Court grants Defendants' Motion as to this testimony.

The second and third challenges are to several lines of questioning on page 149 of the transcript. Defs.' Mot. to Exclude Certain Contract and Defamation Evid. at 7–8. In the first exchange, Lt. Col. Burns's counsel questions Dr. Levy on the Air Force's expectations and intentions with respect to the fellowship. *Id.* Ex. C at 149:4–13. As previously explained, Lt. Col. Burns has not provided any reason why the Air Force's expectations are relevant, and there is no clear connection between those expectations and her defamation claims. These lines should therefore be excluded as irrelevant and because their potential to confuse or mislead the jury substantially outweighs any potential probative value. The Court therefore grants Defendants' Motion as to this testimony.

Subsequently, counsel for Lt. Col. Burns questions Dr. Levy about the summative assessment:

Q.     Do you regret what you wrote in the summative assessment?
A.     No.
Q.     Would you do it again?
A.     Would I do the same thing again?
Q.     Yeah.
A.     Yes.

*Id.* Ex. C at 149:14–20. The Hospital and Dr. Levy advance the same arguments for these lines. The Court agrees that it is unclear how these lines are probative, as whether Dr. Levy regrets his actions does not necessarily make it more or less likely that he had the requisite mental state. Moreover, even if they were probative, that probative value would be outweighed by the possibility

of confusing the issues, misleading the jury, or prejudice to Defendants. The Court therefore grants Defendants' Motion to exclude these lines as well.

        (b) <u>Testimony regarding Lt. Col. Burns's recruitment, her expectations for the fellowship, and the Air Force's expectations for the fellowship.</u>

The Hospital and Dr. Levy challenge portions of proposed testimony by Lt. Col. Burns herself, Dr. Ana Caskin, and Dr. Thomas Grau regarding Lt. Col. Burns's recruitment, her expectations for the fellowship, and the Air Force's expectations for the fellowship. *See* Defs.' Mot. to Exclude Certain Contract and Defamation Evid. at 9. As explained above, this testimony is not probative. Lt. Col. Burns fails to explain how this testimony in particular tends to make it more likely (or not) that Dr. Levy had the mental states that she alleges or how it relates to her current defamation claims at all. Nor is there a clear connection between this testimony and her claims. Even if this testimony were probative, however, presenting testimony about the parties' expectations and whether the fellowship lived up to those expectations would pose a strong risk of misleading the jury and confusing the issues, especially as Lt. Col. Burns's contract claims primarily relating to those arguments have been dismissed. Accordingly, the Court grants Defendants' Motion as to this testimony.

        (c) <u>Testimony regarding the nature of the fellowship and compliance with internal or external standards.</u>

Defendants also challenge proposed testimony by several non-expert witnesses regarding the "disorganized nature of the fellowship" and whether the fellowship (including its feedback and dismissal procedures) complied with University norms or ACGME standards. This appears to include testimony from Dr. Caskin, Dr. Crooke, Jamie Padmore, and Dana Saxton. *See id.* at 9– 10. For the reasons explained in more depth above, this testimony generally does not have probative value with respect to Dr. Levy's mental state.

Lt. Col. Burns has not responded to the Hospital and Dr. Levy's arguments that introducing this testimony would pose a substantial risk of confusing or misleading the jury. The danger of confusing the issues or misleading the jury by introducing this evidence, however, is substantial. This is especially the case because Lt. Col. Burns's contract claims, which were in part premised on "due process" arguments that drew on the same facts, have been dismissed. Her phrasing of this proposed testimony uses similar terms such as "University norms." *See, e.g.*, Joint Pretrial Stmt. at 12, 16. A jury could easily think that whether the program or Dr. Levy complied with norms or standards is a distinct issue, rather than a collateral issue that might minimally shed light on the Defendants' mental state. The Court therefore grants Defendants' Motion as to this testimony.[7]

> (d) <u>Testimony regarding Dr. Levy's conduct toward Lt. Col. Burns during the fellowship and Burn's performance during the fellowship</u>.

Next, the Hospital and Dr. Levy challenge testimony relating to Dr. Levy's interactions with and conduct toward Lt. Col. Burns during the fellowship as well as to Lt. Col. Burns's performance during the fellowship. *See* Defs.' Mot. to Exclude Certain Contract and Defamation Evid. at 9–10. This includes, but is not necessarily limited to, proposed testimony from Dr. Crooke, Nora Frieden, Dr. Grau, Dr. Nelson, Joanne Odom, and Jamie Padmore. *See id.* While Defendants lump this testimony in with the rest of the testimony that they claim is related to Lt. Col. Burns's dismissed contract claims, they also overlook that much of this testimony is probative with respect to Defendants' mental states in publishing the allegedly defamatory statements. Consider Lt. Col. Burns's description of the proposed testimony from Joanne Odom regarding "Dr. Levy's secretly

---

[7] While the materials are not clear on the exact testimony to be offered, this does not necessarily preclude Lt. Col. Burns from calling witnesses to testify about whether Defendants complied with applicable procedures specifically applicable to dismissing her and publishing the statement, which is analogous to the evidence that was probative in *Columbia First Bank*, *Mastro*, and *Ford Credit Motor Co. See supra* Section IV.A.2.ii.

'making book' on Lt. Col. Lt. Col. Burns." *See* Joint Pretrial Stmt. at 16. If Dr. Levy in fact did so, that would tend to make it more likely that he acted with, for instance, malice. Similarly, some evidence relating to Lt. Col. Burns's performance during the fellowship may be relevant to her argument that the contents of the FSA were false. As a general category, much of this evidence appears to be probative. And without more detail on the specific testimony to be proposed (which Lt. Col. Burns has not provided), or more specifics about the risks posed by introducing this testimony in particular (which Defendants have not provided), the Court also cannot say that this testimony has no probative value or that introducing it will confuse the issues, mislead the jury, or unduly prejudice Defendants. Accordingly, the Court denies Defendants' Motion without prejudice as to this category of testimony.

\*       \*       \*

Ultimately, for the above reasons, the Court **GRANTS IN PART**, **DENIES IN PART**, and **DENIES WITHOUT PREJUDICE IN PART** Defendants' Motion *in Limine* to Exclude Proposed Testimony and Evidence on Subjects that Are Not Relevant and Would Be Confusing, Irrelevant, Misleading, and Unfairly Prejudicial, ECF No. 100. In particular, the Court **DENIES WITHOUT PREJUDICE** Defendants' arguments and objections not discussed above, including their arguments not premised on Rules 401 and 403. To the extent that Defendants desire to maintain those objections and arguments, Defendants shall have the opportunity to do so when the parties submit the revised Joint Pretrial Statement.

B. Applicability of the Common Interest Privilege

Lt. Col. Burns contends that the qualified common interest privilege does not apply to the Hospital's and Dr. Levy's statements. Pl.'s Pretrial Stmt. Opp'n at 4–7; Pl.'s Omnibus Opp'n at 13. In response, the Hospital and Dr. Levy advance three arguments. First, they argue that the mandate from the Court of Appeals does not address the Court's finding that the privilege applies.

*See* Defs.' Combined Pretrial Stmt. Objs. and Resp. at 6–7; *id.* at 29–30. Second, and relatedly, the Hospital and Dr. Levy contend that the law-of-the-case doctrine dictates that the common interest privilege applies to the Hospital and Dr. Levy's statements. *Id.* at 28–30. Lastly, they argue that Lt. Col. Burns simply "seeks another bite at the summary judgment apple" and that she nonetheless waived this argument due to lack of timeliness in filing her objections. *See id.* at 29–30. Lt. Col. Burns does not directly respond to the Defendants' law-of-the-case and waiver arguments, except to summarily contend that no decision on this issue has been made. Pl.'s Pretrial Stmt. Opp'n at 4.

The Court denies Lt. Col. Burns's request on three grounds. First, Lt. Col. Burns raises this argument in a procedurally improper manner. She argues this not even in separate a motion *in limine*, but in her objections, when it should have been raised at the summary judgment stage. Second, even if she could raise this argument now, the Court is bound by its prior ruling that the privilege applies under the law-of-the-case doctrine and mandate rule. And, lastly, Lt. Col. Burns's arguments are unconvincing; Defendants have sufficiently demonstrated that the privilege applies. The burden now rests with her to demonstrate at trial that the privilege has been abused.[8]

### 1. Proper Procedure

This is the first time Lt. Col. Burns has directly attacked the application of the qualified privilege. During the first round of summary judgment briefing, Lt. Col. Burns did not question whether the common interest privilege applied. Nor did Lt. Col. Burns raise this issue in the second round of summary judgment briefing on remand. Instead, in the first round of summary judgment, she argued that the malice shown in the record overcame the qualified privilege. *See, e.g.*, *Burns*

---

[8] As the Court decides this argument on these three grounds, it does not address the Hospital and Dr. Levy's argument that Lt. Col. Burns waived this argument by not timely providing her briefing to Defendants. *See* Defs.' Combined Pretrial Stmt. Objs. and Resp. at 28.

*I*, 2016 WL 4275585, at *14 ("Plaintiff does *not* argue that the parties do not qualify for the common interest privilege as a general matter."). And she did not, as explored in more detail below, raise this issue on appeal. *Burns II*, 873 F.3d at 295.

She raises this issue now not even in a formal motion *in limine*, but in her Memorandum of Points and Authorities in Opposition to Defendants' Objections to the Joint Pretrial Statement. Whether the privilege applies is an issue to be decided by this Court and is thus a substantive issue that Lt. Col. Burns should have raised in a motion for summary judgment.[9] *See Payne v. Clark*, 25 A.3d 918, 925 (D.C. 2011) ("Whether a statement is privileged is a question of law."). Even if she had raised this argument in a proper motion *in limine*, that method would still be procedurally improper. Accordingly, the Court denies her request. *See, e.g.*, *C & E Servs., Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008) ("[A] motion *in limine* should not be used to resolve factual disputes or weigh evidence."); *Witness Sys., Inc. v. Nice Sys., Inc.*, No. CIV.A.1:06-CV-126-TC, 2008 WL 2047633, at *1 (N.D. Ga. May 10, 2008) ("As an issue of law in the Court's province, Defendants should have raised the application of prosecution history estoppel in a properly supported motion for summary judgment rather than in a motion in limine on the eve of

---

[9] The Court explained to the parties the proper function of a motion *in limine* in its Pretrial Scheduling and Procedures Order:

> Motions *in limine* are designed to narrow the evidentiary issues at trial and **are not a substitute for motions for summary judgment**. In light of their limited purpose, **motions *in limine* may not be used to resolve factual disputes**, which remains the "function of a motion for summary judgment, with its accompanying and crucial procedural safeguards." *C & E Servs., Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008). The parties should target their arguments to demonstrating why certain items or categories of evidence should (or should not) be introduced at trial, and direct the Court to specific evidence in the record that would favor or disfavor the introduction of those particular items or categories of evidence. *See U.S. ex rel. El-Amin v. George Washington Univ.*, 533 F. Supp. 2d 12, 19 (D.D.C. 2008).

ECF No. 92 at 6.

trial."); *Fox v. Tyson Foods, Inc.*, No. CV-99-1612-VEH, 2007 WL 9751563, at *1 (N.D. Ala. Oct. 17, 2007) ("[A]n issue that is proper for a motion for summary judgment may not be raised in a motion in limine."); *Nat. Res. Def. Council v. Rodgers*, No. CIV-S-88-1658 LKK, 2005 WL 1388671, at *1 n.2 (E.D. Cal. June 9, 2005) ("Motions in limine address evidentiary questions and are inappropriate devices for resolving substantive issues.").

### 2. The Law-of-the-Case Doctrine and the Mandate Rule

Her arguments cannot prevail in any event. Because Lt. Col. Burns raises this issue for the first time here, and did not raise it on appeal, the Court need not reconsider its prior decision that the privilege applies under the law-of-the-case doctrine and the mandate rule.

"The law-of-the-case doctrine generally provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Musacchio v. United States*, 136 S. Ct. 709, 716 (2016) (quoting *Pepper v. United States*, 562 U.S. 476, 506 (2011)). It rests on the premise that "the *same* issue presented a second time in the *same* case in the *same court* should lead to the *same result*." *LaShawn A.*, 87 F.3d at 1393. "Accordingly, a 'legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time.'" *Kimberlin v. Quinlan*, 199 F.3d 496, 500 (D.C. Cir. 1999) (quoting *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 250 (D.C. Cir. 1987)).

Consequently, under the law-of-the-case doctrine and the mandate rule, the district court is not "permitted to reconsider its own rulings made before appeal and not raised on appeal."[10]

---

[10] As some commentators have recognized, courts are not precise in their use of the law-of-the-case doctrine, the mandate rule, and related waiver and forfeiture doctrines. *See, e.g.*, 18B Wright, Miller & Cooper, Federal Practice and Procedure § 4478.6 (2d ed. 2002) ("These considerations,

18B Wright, Miller & Cooper, Federal Practice and Procedure § 4478.3; *see also United States v. Bazemore*, 839 F.3d 379, 385 (5th Cir. 2016) ("'Moreover, the [mandate] rule bars litigation of issues decided by the district court but foregone on appeal or otherwise waived, for example because they were not raised in the district court.'" (quoting *United States v. Lee*, 358 F.3d 315, 321 (5th Cir. 2004))); *United States v. Frias*, 521 F.3d 229, 234 (2d Cir. 2008) ("'And where an issue was ripe for review at the time of an initial appeal but was nonetheless foregone, it is considered waived and the law of the case doctrine bars the district court on remand and an appellate court in a subsequent appeal from reopening such issues[.]'" (quoting *United States v. Quintieri*, 306 F.3d 1217, 1229 (2d Cir. 2002))); *Schering Corp. v. Ill. Antibiotics Co.*, 89 F.3d 357, 358 (7th Cir. 1996) ("Under the doctrine of the law of the case, a ruling by the trial court, in an earlier stage of the case, that could have been but was not challenged on appeal is binding in subsequent stages of the case."); *Laffey v. Nw. Airlines, Inc.*, 740 F.2d 1071, 1089 (D.C. Cir. 1984) ("Adherence to the rule that a party waives a 'contention that could have been but was not raised on [a] prior appeal,' is, of course, necessary to the orderly conduct of litigation." (citation omitted) (quoting *Munoz v. Cnty. of Imperial*, 667 F.2d 811, 817 (9th Cir. 1982), *cert. denied*, 459 U.S. 825 (1982))).

In the first round of summary judgment briefing, Lt. Col. Burns argued that her showing of malice overcame the qualified privilege. *See, e.g.*, *Burns I*, 2016 WL 4275585, at *14 ("Instead, she only argues that the record demonstrates that the transmission of the Verification Form and of

---

however, are a function of efficient relationships between appellate courts and trial courts, not law of the case. The solid explanation is the common explanation of forfeiture—procedural efficiency depends on reliable sanctions. The forfeiture label, however, is rarely used; waiver takes it[s] place, as described below." (citation omitted)). Although this Court recognizes that this argument may be more precisely framed in terms of forfeiture, because the parties, binding authority, and persuasive authority have framed this issue in terms of the law-of-the-case doctrine and the mandate rule, that is how this Court frames it here as well.

the Final Summative Assessment was done with malice."). This Court disagreed. *See id.* at *14–*15. The Court made two relevant findings in *Burns I*. First, although Lt. Col. Burns did not contest the privilege's application, the Court did find that "the common interest privilege bar[red] the defamation claims on the basis of the present record[.]" *Id.* at *14; *see also id.* at *15 ("Accordingly, the common interest privilege serves to bar both of Plaintiff's defamation claims, and the Court grants summary judgment to Defendants regarding the defamation claims."). Lt. Col. Burns is therefore mistaken in her unsupported assertion that this Court has never decided whether the privilege applies. *See* Pl.'s Pretrial Stmt. Opp'n at 4. Second, the Court found that the record did not adequately support a showing of "malice" to overcome the privilege's application. *Burns I*, 2016 WL 4275585, at *14–*15.

The Court of Appeals did not disturb the Court's first finding, as it appears that Lt. Col. Burns did not raise or challenge the privilege's application on appeal. In describing this Court's relevant finding in *Burns I*, the Court of Appeals specifically stated:

> Instead, [the district court] focused on Levy's final "summative assessment" and found that the language used there was not "'so excessive, intemperate, unreasonable, and abusive'" to rise to the level of "malice"—which, **the parties agree, would trigger a recognized exception to the common interest privilege otherwise shielding the Hospital's communications to the Air Force**. But Padmore's December 2012 letter, the February 2013 Verification Form, and Levy's final summative assessment all contain the positive declaration that Burns was dismissed for cause. No matter how temperate the language, the common interest privilege "exists only if the publisher believes, with reasonable grounds, that the statement is true."

*Burns II*, 873 F.3d at 295 (citations omitted) (emphasis added).

The Court of Appeals explicitly noted that the parties agreed that the common interest privilege otherwise shielded the communications at issue. It ultimately reversed the grant of summary judgment on the defamation claims because evidence in the record presented a genuine

factual dispute as to whether the privilege could be overcome. *Id.* at 297. It consequently did not consider, address, or make any findings about the common interest privilege's actual application.

Lt. Col. Burns did not raise this argument in the first round of summary judgment briefing. Nor did she raise it on appeal or during the second round of summary judgment briefing. She cannot have a fourth bite at the apple and raise this argument here. *See, e.g.*, *United States v. Thomas*, 572 F.3d 945, 948–49 (D.C. Cir. 2009) (finding that "on remand the district court was bound by its previous unappealed ACCA determination as the law of the case"); *Fed'n of Advert. Indus. Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 929 (7th Cir. 2003) (finding that party was "precluded from resurrecting its damages claim" under law-of-the-case doctrine because district court denied damages claim and party did not raise issue on appeal); *Concrete Works of Colorado, Inc. v. City & Cty. of Denver*, 321 F.3d 950, 992–93 (10th Cir. 2003) (finding that district court erred in ruling on narrow tailoring issue on remand because its prior decision that plan was narrowly tailored was not challenged or addressed on appeal); *United States v. Connell*, 6 F.3d 27, 30–31 (1st Cir. 1993) (finding that defendant could not raise challenge to cost-of-confinement order in post-appeal motion for consideration because defendant did not originally appeal order in his first appeal).

However, "law-of-the-case doctrine is prudential; the Supreme Court has instructed that courts may 'reopen what has been decided,' though they should 'as a rule . . . be loath[] to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice.'" *PNC Fin. Servs. Grp., Inc. v. Comm'r of IRS*, 503 F.3d 119, 127–28 (D.C. Cir. 2007) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)). Lt. Col. Burns has not offered any extraordinary circumstances to justify why this Court should depart from its prior ruling—nor are there any. There has been no

change in evidence or the governing law that would warrant departure, and nothing suggests that manifest injustice would result from the Court adhering to its prior finding that the privilege applies. Accordingly, Lt. Col. Burns cannot raise this argument now, and the Court denies her request on this ground.

### 3. The Common Interest Privilege

Lt. Col. Burns's arguments are unpersuasive on their merits as well. For the common interest privilege to apply, "the statement must have been (1) made in good faith, (2) on a subject in which the party communicating has an interest, or in reference to which he has, or honestly believes he has, a duty to a person having a corresponding interest or duty, (3) to a person who has such a corresponding interest." *Moss*, 580 A.2d at 1024. Once a court determines that a statement is subject to this qualified privilege, the burden shifts to plaintiff to demonstrate that the privilege was abused. This can be done, for instance, by showing that the statement was made in bad faith or was a knowingly false statement.[11] *See id.* ("Once the court determines a statement is subject to the 'common interest' privilege, the defendant 'will be presumed to have been actuated by pure motives in its publication. In order to rebut this presumption, express malice or malice in fact must be shown [by the plaintiff].'" (quoting *Ford Motor Credit*, 367 A.2d at 1314)).

The Hospital and Dr. Levy have met their burden to establish that the common interest applies.[12] First, the Hospital and Dr. Levy "were communicating about subject matter in which

---

[11] Excessive publication also defeats the privilege, *see Mastro*, 447 F.3d at 858, but Lt. Col. Burns has not raised any excessive publication argument here.

[12] For this argument in particular, the Court also considered Defendants' Memorandum of Points and Authorities in Support of Their Joint Motion for Summary Judgment as to Counts IV, V and VI of Plaintiff's Second Amended Complaint ("Defs.' First Summ. J. Mem."), ECF No. 64-1, and Defendants' Reply Memorandum in Support of Their Motion for Summary Judgment as to Counts Four, Five and Six of Plaintiff's Second Amended Complaint ("Defs.' First Summ. J. Reply"), ECF No. 75, as the Hospital and Dr. Levy incorporated those arguments into their briefing here, *see* Defs.' Combined Pretrial Stmt. Objs. and Resp. at 30.

they had an interest, or in reference to which they had, or honestly believed they had, 'a duty to a person having a corresponding interest or duty.'" *Alade v. Borg-Warner Protective Servs. Corp.*, 28 F. Supp. 2d 655, 656 (D.D.C. 1998) (quoting *Mosrie*, 467 A.2d at 477). Lt. Col. Burns argues that Hospital personnel and Dr. Levy had no interest in communicating, or duty to communicate, with the Air Force. Pl.'s Pretrial Stmt. Opp'n at 6. She argues, in essence, that the interests of the Air Force and of Hospital personnel (such as Jamie Padmore) and Dr. Levy must almost identically align. For example, she explains that Dr. Levy had no corresponding interest because he did not operate his fellowship under the AFGME standards, and that Padmore had no corresponding interest because the Air Force never requested the type of letter that she wrote. *See id.* However, Lt. Col. Burns has provided no authority for this entire portion of her argument.

Contrary to Lt. Col. Burns's assertions, these types of statements regarding discharged employees fall squarely within the common interest privilege. *See, e.g.*, *Mastro*, 447 F.3d at 857 (affirming district court's decision that common interest privilege applied to employer's termination memorandum listing reasons for dismissal); *Joftes v. Kaufman*, 324 F. Supp. 660, 662 (D.D.C. 1971) (finding that notice of dismissal for cause published by employer to those with "legitimate interest in the subject matter" was protected); *Moss*, 580 A.2d at 1033 (concluding that employer had interest "indistinguishable from those of any other employer" in communicating reasons for plaintiff's discharge, and that interest was "amply protected by the qualified 'common interest' privilege"). In fact, "[t]he law has long recognized a privilege for anything 'said or written by a master in giving the character of a servant who has been in his [or her] employment.'" *Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873, 879 (D.C. 1998) (quoting *White v. Nicholls*, 44 U.S. (3 How.) 266, 287 (1845)).

Considering the uncontroverted evidence that Lt. Col. Burns was a member of the Air Force and that Air Force personnel solicited information about her dismissal from the fellowship, the Air Force and her supervisors had an interest in receiving information about that dismissal. *See* Defs.' Stmt. of Undisputed Material Facts, ECF No. 64-2, at ¶¶ 11–23[13]; Pl.'s Stmt. of Undisputed Material Facts, ECF No. 71–1, at ¶¶ 139–41. Based upon that request and their position, Defendants have demonstrated that the Hospital and Dr. Levy similarly had an interest—or at least believed they had an interest—in publishing the statements at issue.

Moreover, the same evidence supports that the Hospital and Dr. Levy showed that they acted in good faith sufficient for the privilege to apply. In general, courts have not analyzed what the invoking party must show to demonstrate good faith. Courts have instead mostly examined whether plaintiffs have met the demanding standard for showing that the defendants acted with malice. This suggests that the party invoking the privilege must make a facial showing of good faith, and if the court subsequently finds that the privilege applies, there is a presumption that the parties acted in good faith that plaintiff must overcome. *See, e.g.*, *SDV/ACCI, Inc. v. AT & T Corp.*, 522 F.3d 955, 961–62 (9th Cir. 2008); *Armenian Assembly of Am., Inc. v. Cafesjian*, 692 F. Supp. 2d 20, 49 (D.D.C. 2010), *aff'd*, 758 F.3d 265 (D.C. Cir. 2014); *Alade*, 28 F. Supp. 2d at 656–57; *Columbia First Bank*, 665 A.2d at 655–56. The Hospital and Dr. Levy have met this standard here. They claimed that the Hospital and Dr. Levy acted in good faith in publishing their statements. Defendants argue, and the evidence supports, that they provided their statements, including the final summative assessment, at the request of Air Force personnel. *See* Defs.' First Summ. J. Mem.

---

[13] Lt. Col. Burns disputed some of these facts in her Statement of Disputed Material Facts in Response to Defendants' Statement of Undisputed Facts as to the Tort-Based Claims, ECF No. 71-3, but did not dispute the core facts that Air Force personnel requested information on Lt. Col. Burns's dismissal and that Dr. Levy and the Hospital provided it, *see id.* at ¶¶ 11–23.

at 24–25; Defs.' Stmt. of Undisputed Material Facts at ¶¶ 11–23; Pl.'s Stmt. of Undisputed Material Facts at ¶¶ 139–41.

Lt. Col. Burns argues without supporting authority that the publications were not made in good faith for various reasons, including that Dr. Levy had never before completed an assessment and did not follow the AFGME protocol. Pl.'s Pretrial Stmt. Opp'n at 5–6. She misunderstands the burden-shifting framework at play here by repeating what are essentially her malice arguments. If a defendant has made a showing that the privilege applies, and once the court determines that it does apply, only then does plaintiff have the burden to "to prove the privilege has been abused," including "by showing that the statement was made with express malice or malice in fact." *Blodgett v. Univ. Club*, 930 A.2d 210, 224 (D.C. 2007) (internal quotation marks omitted) (quoting *Alfred A. Altimont*, 374 A.2d at 290; *Moss*, 580 A.2d at 1024). Lt. Col. Burns also overlooks that "even a showing of ill will does not 'forfeit the privilege so long as the *primary* purpose is to further the interest which is entitled to protection.'" *Mastro*, 447 F.3d at 859 (quoting *Columbia First Bank*, 665 A.2d at 656).

For the foregoing reasons, the Court **DENIES** Lt. Col. Burn's request that this Court decide that the qualified privilege is inapplicable. This is not to say that Lt. Col. Burns cannot attempt to overcome the privilege's application at trial. Indeed, it is because of that possibility that the Court of Appeals reversed and remanded this Court's decision in *Burns I*. *See Burns II*, 873 F.3d at 295. As noted above, a plaintiff can overcome the privilege by demonstrating that the defendant did not act in good faith. *See, e.g.*, *Wallace*, 715 A.2d at 879 ("In order to overcome the privilege, it is 'incumbent on the party complaining to show malice.'" (quoting *White*, 44 U.S. (3 How.) at 287)). Lt. Col. Burns is not precluded from making such arguments at trial, subject to the evidentiary

limitations prescribed by the Court, as whether the privilege "was abused by the [Defendants] is a question of fact for the jury." *Mosrie*, 467 A.2d at 477.

<u>C. Defendants' Motion *in Limine* to Exclude Testimony of Previously Undisclosed Witnesses</u>

Defendants also object to Lt. Col. Burns's inclusion of certain witnesses in the Pretrial Statement whom they claim were not disclosed under Federal Rule of Civil Procedure 26. This includes potential witnesses Jason Beverly; Shivleen Dhaliwal; Col. Michael Forgione, M.D.; Joseph Lopreiato, M.D.; Colleen McLeod, M.D.; Dana Saxton; Col. Michael Tankersley; Krishna Upadhya, M.D.; Susan Weeks; and Col. Leslie Wilson, M.D. *See* Defs.' Combined Pretrial Stmt. Objs. and Resp. at 8, 15–16, 18–19, 22–26; Defs.' Mot. to Exclude Certain Undisclosed Witnesses at 2. In response, Lt. Col. Burns argues that Rule 26 was not violated because Defendants had "ample notice" of these witnesses and because Defendants have shown no prejudice. Pl.'s Pretrial Stmt. Opp'n at 10–11; *see* Pl.'s Omnibus Opp'n at 8–11. The parties here have not provided sufficient information for the Court to determine whether the relevant rules have been violated.

Rule 26(a)(1) requires a party to make initial disclosures regarding "each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i). Rule 26(e) further requires a party to supplement its initial disclosures, or responses to discovery, "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Under Rule 37, if a party fails to "identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed.

R. Civ. P. 37(c)(1). "The burden is on the party resisting sanctions to demonstrate that its failure to provide information was either substantially justified or harmless." *Amiri v. Omni Excavators, Inc.*, No. CV 18-586 (RMC), 2019 WL 5653622, at *4 (D.D.C. Oct. 31, 2019) (internal quotation marks omitted) (quoting *Flynn v. Dick Corp.*, No. 03-1718 (AK), 2008 WL 2410406, at *3 (D.D.C. June 16, 2008)).

Although the parties have not cited it, Local Civil Rule 16.5 imposes an additional requirement:

> No objection shall be entertained to a witness or to testimony on the ground that the witness or testimony was disclosed for the first time in a party's Pretrial Statement, unless the party objecting has unsuccessfully sought to learn the identity of the witness or the substance of the testimony by discovery, and the Court or magistrate judge finds the information to have been wrongfully withheld.

LCvR 16.5(b)(5). Preclusion of evidence, as requested by Defendants here, "is an extreme sanction," and courts should generally "consider less drastic responses before imposing this sanction."[14] *Richardson v. Korson*, 905 F. Supp. 2d 193, 200 (D.D.C. 2012) (internal quotation marks omitted) (quoting *United States v. City of New York*, No. 07–2067, 2010 WL 2838386, at *3 (E.D.N.Y. July 19, 2010)).

Lt. Col. Burns does not contest that she did not include the witnesses listed above in her initial disclosures or in any supplementary disclosures. Defs.' Mot. to Exclude Certain Undisclosed Witnesses at 2; *id.* Ex. A (exhibit with Lt. Col. Burns's initial disclosures). Nor did she supplement her initial disclosures with these witnesses. Defs.' Mot. to Exclude Certain Undisclosed Witnesses at 2; *cf.* May 28, 2015 Memorandum Opinion and Order, ECF No. 55 (allowing Lt. Col. Burns to supplement disclosures in 2015 to add two different witnesses on

---

[14] These same legal principles, including portions of Federal Rules of Civil Procedure 26 and 37 and Local Rule 16.5, are applicable to several of Defendants' Motions *in Limine*. The Court repeats the basics of these principles in those discussions as appropriate for clarity purposes.

condition that additional discovery regarding witnesses would be available).  Considering that there have been multiple rounds of dispositive briefing, that issues in the case have gone up on appeal and been remanded, and that the parties are relatively close to trial, failure to provide this information to Defendants could be prejudicial.  *See Elion v. Jackson*, 544 F. Supp. 2d 1, 6 (D.D.C. 2008) (finding prejudice because party could not prepare for testimony from previously undisclosed witness); *United States ex rel. Purcell v. MWI Corp.*, 520 F. Supp. 2d 158, 168 (D.D.C. 2007) ("The harm from the failure to disclose a witness flows from the unfair surprise hindering the prejudiced party's ability to examine and contest that witness' evidence."), *rev'd and remanded on other grounds*, 807 F.3d 281 (D.C. Cir. 2015).

Lt. Col. Burns argues that, even if there were harm to Defendants, she had no obligation to supplement her disclosures because the information was otherwise made known to Defendants through discovery and other briefing.   Pl.'s Pretrial Stmt. Opp'n at 10–11; *see* Pl.'s Omnibus Opp'n at 8–11.  She provides few to no details to substantiate that statement, and Defendants appear to contest that she provided sufficient information to put them on notice that these individuals may be called as witnesses at trial.  Defs.' Reply to Pl.'s Omnibus Opp'n at 11–12. Furthermore, neither party addresses whether the requirements of Local Civil Rule 16.5 have been met.

Without more information about what information was requested and provided during discovery, the Court cannot fairly determine whether there has been a violation of the relevant rules, whether any violation was harmless or substantially justified, and whether any particular remedy is warranted.  Accordingly, the Court **DENIES WITHOUT PREJUDICE** Defendants' Motion.  Before the Court could determine whether these witnesses should be excluded, the parties would have to file more detailed briefing specifically addressing what information regarding these

witnesses was disclosed in discovery or in writing, whether Defendants sought to learn the witnesses' identities during discovery, and the result of any such efforts.

## D. Defendants' Motion *in Limine* to Exclude Certain Expert Testimony

Defendants also object to the testimony that Lt. Col. Burns has indicated her expert witness, Dr. Gregory Blaschke, will offer. Defendants argue that Dr. Blaschke opined on limited topics relating to whether due process was afforded to Lt. Col. Burns and whether the program was operated under certain standards. Defs.' Mot. to Exclude Expert Test. at 2. In the parties' Joint Pretrial Statement, Lt. Col. Burns explained that Dr. Blaschke was anticipated to testify on several topics:

> Dr. Blaschke prepared two expert reports and testified in two depositions. He will testify consistently with the opinions presented in his reports and depositions. In summary, he will testify that Dr. Levy's supervision of Lt. Col. Burns was unprofessional in that Levy had never prepared a Final Summative Assessment in his career for a Fellow. Levy failed to document and counsel with Lt. Col. Burns on a regular basis, making his Final Summative Assessment invalid. Dr. Blaschke will testify that if training was not completed with the institution, it would be unusual to report negative summative comments to any entity by that institution if there had not been a due process consideration. Levy also failed to corroborate his observations by interviewing others who worked with Lt. Col. Burns. Any reader of the Final Summative Assessment would credit the negative statements made by Levy on the assumption that they were corroborated.

Joint Pretrial Stmt. at 10. Defendants object to the anticipated testimony on several grounds, including relevance, the reliability of the principles and methods applied by Dr. Blaschke, and the unhelpfulness of his opinions to the jury. Defs.' Combined Pretrial Stmt. Objs. and Resp. at 11–12; Defs.' Mot. to Exclude Expert Test. at 2–4.

### 1. General Relevance Objections

Defendants argue that the opinions to be offered by Dr. Blaschke are not relevant—or are inadmissible as prejudicial, confusing, or misleading—because they relate to the FSA and to the dismissed contract claims. Defendants' relevance objections are generally encompassed by the

Court's above discussion and conclusions regarding which evidence is relevant in light of the dismissal of Lt. Col. Burns's contract claims and the mandate on remand. In short, the Court previously explained that whether the contents of the FSA were defamatory is still at issue in this case, and that certain evidence related to the contract claims is still relevant insofar as it speaks to, among other things, Dr. Levy's mental state and whether the procedures for publishing the statement were followed. *See supra* Section IV.A.

The same reasoning and conclusions can be applied to the anticipated testimony from Dr. Blaschke, albeit by providing broad guidelines, as the description of anticipated testimony is similarly broad. In general terms, he will testify as to Dr. Levy's "unprofessional" supervision of Lt. Col. Burns. Joint Pretrial Stmt. at 10. Upon review of Dr. Blaschke's expert reports, which the parties have previously provided to this Court, it appears that this might refer to the way in which the program was run and in which feedback was provided to Lt. Col. Burns, including compliance with University norms or ACGME standards, as well as whether "due process" was afforded to Lt. Col. Burns. *See* Dr. Blaschke's July 7, 2014 Report, ECF No. 45-2; Dr. Blaschke's March 10, 2015 Report, ECF No. 45-3. To the extent that Dr. Blaschke's testimony would address compliance with these standards or "due process" opinions, such testimony shall be excluded. As the Court previously explained, *see supra* Section IV.A, such opinions are either not relevant or outweighed by the potential of prejudice, confusing the issues, or misleading the jury in light of the contract claims' dismissal.

However, it is not clear that all of Dr. Blaschke's testimony should be excluded on this basis. For instance, Dr. Blaschke opined on Dr. Levy and the Hospital's adherence to procedures in drafting the FSA and in immediately discharging Lt. Col. Burns, which have probative value. As the Court indicated above, whether an allegedly defamatory statement such as the FSA was

drafted and communicated in alignment with applicable procedures or norms is probative with respect to whether Defendants acted with "malice." *See supra* Section IV.A; *Mastro*, 447 F.3d at 859; *Columbia First Bank*, 665 A.2d at 655. While the testimony could possibly prejudice Defendants, as they argue, it is less likely to mislead the jury or confuse the issues because Dr. Blaschke would be speaking directly to the narrow issue of the processes and procedures used in preparing the FSA and in discharging Lt. Col. Burns. Even so, the high probative value of such testimony would outweigh any such concerns. On the present record, this narrow category of testimony shall not be excluded on relevance grounds.

Otherwise, in light of the determinations in this Memorandum Opinion and the lack of detail regarding Dr. Blaschke's anticipated testimony, the Court cannot determine what exactly his proposed testimony will contain. Accordingly, the Court shall require Lt. Col. Burns to specify his anticipated testimony with more detail in the parties' revised Joint Pretrial Statement, including by references to his two reports if such references may be helpful. To the extent that Defendants object to other portions of Dr. Blaschke's testimony on Rule 401 or 403 grounds, the Court denies that aspect of their Motion without prejudice.

### 2. Expert-Specific Objections

Defendants also challenge Dr. Blaschke's testimony under Federal Rules of Evidence 702 and 703. "[D]istrict courts have 'broad discretion in determining whether to admit or exclude expert testimony.'" *United States ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, 608 F.3d 871, 895 (D.C. Cir. 2010) (quoting *United States v. Gatling*, 96 F.3d 1151, 1523 (D.C. Cir. 1996)). Rule 702, which "governs testimony from expert witnesses—those who testify based on scientific, technical, or specialized knowledge in a field of expertise," *United States v. Smith*, 640 F.3d 358, 365 (D.C. Cir. 2011), provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>>
>> (b) the testimony is based on sufficient facts or data;
>>
>> (c) the testimony is the product of reliable principles and methods; and
>>
>> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 703 explains the bases on which experts may rely:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703. "Under Rule 702, trial courts are required to act as gatekeepers who may only admit expert testimony if it is both relevant and reliable." *Blake v. Securitas Sec. Servs., Inc.*, 292 F.R.D. 15, 17 (D.D.C. 2013) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999)). "Expert testimony is relevant if it will assist the trier of fact to understand the evidence presented in the case." *Id.* "While the way in which reliability is evaluated may vary from case to case, in all cases, the trial judge must find that the proffered testimony is properly grounded, well-reasoned, and not speculative before it can be admitted." *Id.* (internal quotation marks and alterations omitted) (quoting *United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004) (en banc); Fed. R. Evid. 702, Advisory Committee's Note on 2000 Amendments).

Certain standards apply to expert designations and reports as well. Pursuant to Rule 26(a)(2)(A), "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." If an expert witness is "retained or specially employed to provide expert testimony in the case," the witness must also

provide a report including the information set forth in Rule 26(a)(2)(B), which includes "the substance of the opinions the expert plans to offer and the facts and data he relies upon." *Blake*, 292 F.R.D. at 17. The report "should be written in a manner that reflects the testimony to be given by the witness." Fed. R. Civ. P. 26(a)(2)(B), Advisory Committee's Note on 1993 Amendments. If a party fails to adhere to these requirements, it is subject to sanctions, including exclusion of expert testimony. Fed. R. Civ. P. 37(c)(1).

Defendants' challenges to Dr. Blaschke's testimony here fall into three broad categories. They first contend that his opinions will not be "helpful to the jury because they are not the product of reliable principles and methods applied to the facts of the case" and are instead "speculations and assumptions" disallowed by Federal Rule of Evidence 702. Defs.' Mot. to Exclude Expert Test. at 9–10. Second, they propose that Dr. Blaschke's testimony must be precluded under Federal Rule of Evidence 703 because he did not personally observe the facts or data and the facts and data that he did rely upon are inadmissible. *Id.* at 10–11. Lastly, they argue that he was never offered as an expert on certain topics. *Id.* at 10. Although the parties' briefing here lacks specifics, the Court will attempt to address each of these arguments.

As for their first argument, Defendants advance that Dr. Blaschke's opinions are "speculations and assumptions about what motivated Dr. Levy and what he or the Air Force knew or assumed." *Id.* at 10. Defendants have not identified any particular testimony that they are concerned about and instead have apparently aimed this argument at the entirety of his testimony. There are two issues with this argument. First, the Court has found that testimony generally regarding Dr. Levy's motivations, Lt. Col. Burns's expectations for the fellowship, and whether this was a "rogue" fellowship shall be excluded on relevance and other grounds, *see supra* Section IV.D.1, and that is no less true here. In this respect, Defendants' Motion raises issues that are moot.

Second, it is not clear that the remaining opinions of Dr. Blaschke found relevant above are just speculations and assumptions. Assuming for purposes of this Motion that Dr. Blaschke qualifies as an expert on these topics, his opinion that Dr. Levy and the Hospital did not adhere to common procedures and norms in terminating Lt. Col. Burns or drafting the FSA do not appear to be mere speculations or assumptions. Neither party, however, addresses whether this specific testimony should be excluded under Rule 702.

Defendants second argument is similarly broad; they argue that his testimony must be excluded because it is based on facts he did not personally observe and on evidence that is inadmissible. Again, two issues arise with this argument. First, Defendants' argument assumes that the contents of the FSA are not at issue here, and that certain evidence is inadmissible, which is contrary to what the Court found above. *See supra* Section IV.A. As a result, Defendants' arguments are not on point. Second, Defendants make a blanket statement that the documents he relied on are inadmissible without identifying which specific documents of the many that he reviewed are inadmissible.

As for Defendants' last argument, the parties have similarly presented insufficient information for the Court to determine whether it has any merit. Neither side has explained to this Court exactly which topics Dr. Blaschke was originally designated as an expert, which is necessary to address Defendants' arguments that the testimony should be excluded because Dr. Blaschke was not designated as an expert on certain topics in accordance with Rule 26. *See* Defs.' Mot. to Exclude Expert Test. at 10. Nor have the parties provided this Court with any designation documentation to aid in this determination.

At bottom, the parties have not provided this Court with sufficient information to determine whether Dr. Blaschke's testimony should be excluded under Rules 702 and 703. On the present

record, and in light of the other rulings that may impact the parties' arguments with respect to Dr. Blaschke's testimony, the Court shall **DENY WITHOUT PREJUDICE** Defendants' Motion on this basis. As noted above, the Court shall require Lt. Col. Burns to detail Dr. Blaschke's anticipated testimony in the parties' revised Joint Pretrial Statement. If Defendants again raise the same arguments that they have raised here, the parties must file more detailed briefing addressing on which topics Dr. Blaschke was designated as an expert; whether and how, in light of the Court's other decisions in this Memorandum Opinion, his testimony relies on facts he did not personally observe and/or inadmissible evidence; and whether and how the proposed testimony (including testimony specifically found relevant above) should be excluded under Rule 702. The same is true of Defendants' relevance objections to Dr. Blaschke's testimony, as outlined above.

### E. Defendants' Motion *in Limine* to Exclude Damages Evidence

Defendants' next Motion *in Limine* seeks to exclude two categories of evidence related to damages: lost income damages and attorneys' fees.

#### 1. Evidence Related to Lost Income Damages

In the Joint Pretrial Statement, Lt. Col. Burns's listed loss of income as a category of damages, with the amount "to be determined." Joint Pretrial Stmt. at 24. The Hospital and Dr. Levy argue that evidence of lost income damages should be excluded on three bases: Lt. Col. Burns failed to previously disclose it as a category of damages, she has yet to provide a full computation of the claimed damages, and the damages are speculative. Defs.' Mot. to Exclude Damages Evid. at 4–7. In response, Lt. Col. Burns suggests that she generally indicated intent to claim lost income damages, that her failure to list it more specifically was substantially justified and harmless, and that her claim is not speculative. Pl.'s Omnibus Opp'n at 3–6. The Court agrees with Defendants that this category of evidence should be excluded.

Under Federal Rule of Civil Procedure 26, parties have a duty to provide in their initial disclosures:

> a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered[.]

Fed. R. Civ. P. 26(a)(1)(A)(iii). As for interrogatories, parties have an obligation to answer them "separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). These duties also include a continuing obligation to supplement or correct disclosures and discovery responses "in a timely manner" if a party "learns that in some material respect the disclosure or response [was] incomplete or incorrect." Fed. R. Civ. P. 26(e)(1). If a party fails to provide information required in its disclosures, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless," or the court may impose other appropriate sanctions. Fed. R. Civ. P. 37(c)(1). Rule 16 also authorizes a court to impose sanctions if a party "fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f). The party resisting sanctions under Rule 37 has the burden to show that any failure was harmless or substantially justified. *Amiri*, 2019 WL 5653622, at *4.

Here, Lt. Col. Burns did not list lost income as a category of damages in her initial disclosures. In her May 2014 initial disclosures, she listed the following categories of damages without providing any computations: "emotional injury, damage to her reputation, damage to her future career and delay in her career development due to the improper 'Final Summative Assessment' of Dr. Levy, and termination of her fellowship, as well as breach of her fellowship agreement." Defs.' Mot. to Exclude Damages Evid. Ex. A at 2–3. She explained that the jury would "properly quantify" her damages. *Id.* Ex. A at 3. In addition, Defendants claim that she did not specify lost income as a category of damages for defamation in response to a detailed

interrogatory requesting all damages she claimed and a computation of those damages. *Id.* at 3. She sought to amend her initial disclosures in April 2015 to add two witnesses who would support her claims for emotional distress damages, but she has not sought to supplement her disclosures or responses with any information relating to lost income damages. *See* Pl.'s Mot. for Leave to Suppl. Initial Disclosures to Add Add'l Witnesses, ECF No. 44.

Lt. Col. Burns does not contest these assertions. Rather, she argues that although she did not explicitly list lost income as a category of damages in her disclosures, "it was otherwise made known in a general sense." Pl.'s Omnibus Opp'n at 4. In other words, she argues that lost income is not a separate category of damages but "stems from the damage" to her career and lost opportunities. *Id.* at 5. She is mistaken. Her general assertions that she lost opportunities, or that her career development was delayed, was insufficient to put Defendants on notice that she intended to claim lost income damages, which is a distinct category of damages. *See Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1221 (11th Cir. 2010) (upholding district court's determination that repeated failure to disclose distinct category of "loss of goodwill" damages justified preclusion of evidence relating to those damages). In fact, her assertions that "the specific data [regarding lost income] has been unknown until very recently" and that "the information regarding loss of income is now *somewhat* knowable" suggest that Defendants could not have been aware of the claimed lost income damages. *See* Pl.'s Omnibus Opp'n at 4, 5 (emphasis added).

She also contends that even if lost income damages were insufficiently disclosed, that failure was substantially justified or harmless and therefore undeserving of sanctions under Rule 37. For instance, she claims that information relating to these damages was only recently obtained. But she provides no explanation as to why they were only recently obtained and why she has not sought to supplement her disclosures with this information, even though some of the new exhibits

she wants to introduce that appear related to these damages date back to 2016. *See id.* at 12. Her unsupported assertion that this was justified is insufficient to carry her burden here. The same is true of her statement that there is no harm because Defendants were "not surprised that loss of income would be part of Lt. Col. Burns's damage to her career." *Id.* at 5. There would be harm, as allowing her to present evidence related to these damages would leave the Court with essentially two options: to allow her to introduce the evidence without Defendants having the chance to conduct discovery related to these damages or to allow additional discovery and further delay the trial. Both options present the possibility of significant prejudice to Defendants. *See Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1180 (9th Cir. 2008) (finding that harm would occur when allowing evidence would require additional briefing and reopening discovery), *as amended* (Sept. 16, 2008).

In her briefing, Lt. Col. Burns suggests that this Court should consider five factors used by the Fourth Circuit and adopted by another judge in this district to determine whether failure to disclose evidence was substantially justified or harmless. *Id.* at 5. These factors are:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the [case]; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*DAG Enterprises, Inc. v. Exxonmobil Corp.*, No. CIV.A. 00-0182 (RBW), 2007 WL 4294317, at *1 (D.D.C. Mar. 30, 2007) (quoting *S. States Rack and Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003)). While this five-factor test is not binding on this Court, it is similarly unhelpful for Lt. Col. Burns. As for the first factor, despite her unsupported statement that Defendants would not be surprised, the fact that she has not indicated her intent to claim these damages before now through either her disclosures, discovery responses, discovery productions, depositions, or any other means suggests that Defendants are surprised by her claiming these

damages now. The second factor also weighs against her: Although this Court could reopen discovery, this case has been ongoing for six years. Defendants' strategy in approaching the case has likely not encompassed addressing damages of which they were not aware, and a short period of discovery cannot fully cure their surprise. Nor does the third factor favor her—allowing evidence related to a new category of damages six years into the case and years after both rounds of discovery have closed would certainly disrupt the case and delay trial.

The importance of the evidence, moreover, is not so great as she claims. While Lt. Col. Burns suggests that this evidence supports that she would have been promoted, it is unclear how it does so. She has presented the Court with four of the ten new exhibits. Those four exhibits consist of recommendations for her promotion and merit awards. *See* Pl.'s Omnibus Opp'n Exs. 1–4; *see also* Defs.' Mot. to Exclude Certain Exs. at 7 (listing descriptions of other new exhibits, which are similar in nature); Pl.'s Omnibus Opp'n at 12 (describing four new exhibits in similar terms). These documents do not discuss why she was not promoted. Nor do they suggest that but for the actions of Dr. Levy and the Hospital, she would have been promoted and made an increased income. How this new evidence supports her claim is consequently murky, and as a result, these documents do not have the importance that she attaches to them. As for the last factor, she has provided no explanation as to why this evidence was only recently obtained and why she failed to supplement her disclosures. In fact, she does not even identify at what point she obtained the evidence. Accordingly, even under the five-factor test she proposes, Lt. Col. Burns's arguments would not prevail.

What is more, she has also failed to provide a computation of her lost income damages. As previously described, she did not include a computation in her initial disclosures, supplemental disclosures, or responses to discovery requests. Nor does she provide one now, other than to

explain in her briefing that she would have at been promoted in 2019 and earned $1,361 more a month under 2020 pay rates. Pl.'s Omnibus Opp'n at 5–6. She does not assert that any evidence she seeks to introduce, including proposed exhibits or testimony, will demonstrate exactly how much lost income she claims as damages. *See id.* Instead, she suggests that "[t]his is a factual question for the trier of fact." *Id.* at 5. But she misunderstands her obligation under Rule 26 and under this Court's Pretrial Scheduling and Procedures Order ("PSP Order"), ECF No. 92. Rule 26 required her to provide "a computation of each category of damages claimed by the disclosing party." Fed. R. Civ. P. 26(a)(1)(A)(iii). The April 15, 2019 PSP Order further required her to include in the Joint Pretrial Statement "[a]n itemization of damages by the party seeking to recover, setting forth separately each element of damages, and the monetary amount thereof, including prejudgment interest, punitive damages, and attorneys' fees." PSP Order at 3–4. Her inclusion of the difference in pay between her current rank and the rank she believes she would have obtained is insufficiently specific. It satisfies neither of these requirements.

For the foregoing reasons, evidence relating to Lt. Col. Burns's lost income damages shall be excluded.[15] *See City of Rome v. Hotels.com, L.P.*, 549 F. App'x 896, 904–05 (11th Cir. 2013) (upholding exclusion of category of "back tax damages" because plaintiffs and their experts did not provide computation of damages, and rejecting argument that failure to comply with discovery obligations was justified because they did not have data); *Green Edge Enterprises, LLC v. Rubber Mulch Etc., LLC*, 620 F.3d 1287, 1304 (Fed. Cir. 2010) (upholding district court's exclusion of evidence relating to "exemplary damages" because plaintiff did not present computation of damages); *Big Lots Stores, Inc. v. Luv N' Care, Ltd.*, 302 F. App'x 423, 429–30 (6th Cir. 2008)

---

[15] Because the Court resolves this Motion on these grounds, it does not directly address Defendants' arguments that her claimed lost income damages are speculative.

(upholding trial court's preclusion of evidence relating to lost profits and storage costs because plaintiff repeatedly did not include damages in disclosures or discovery responses and failed to provide computations); *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295–96 (2d Cir. 2006) (upholding district court's exclusion of evidence relating to "lost profits" category of damages because plaintiff neither disclosed those damages in disclosures nor provided computation of lost profits damages).

*2. Attorneys' Fees*

Lt. Col. Burns also listed attorneys' fees, with the amount "to be determined," as a category of damages in the Joint Pretrial Statement. Joint Pretrial Stmt. at 24. The Hospital and Dr. Levy argue that evidence of attorneys' fees should be excluded, and that her request for attorneys' fees should be stricken, for three reasons: first, as a matter of District of Columbia law she cannot recover attorneys' fees; second, she did not disclose this category of damages in her discovery disclosures or responses; and third, she has not provided a computation of such damages. Defs.' Mot. to Exclude Damages Evid. at 1–2.

### i. Availability of Attorneys' Fees

Defendants first contend that Lt. Col. Burns cannot recover attorneys' fees because the District of Columbia adheres to the "American Rule." Defs.' Mot. to Exclude Damages Evid. at 7–9. It is unclear whether Lt. Col. Burns seeks attorneys' fees as its own category of damages or whether she seeks to introduce evidence of attorneys' fees as a relevant consideration for punitive damages. To clarify, the authorities cited by Lt. Col. Burns do not support that she may independently seek attorneys' fees for her defamation claims, but do support that evidence of attorneys' fees may be considered when computing punitive damages.

In general, the District of Columbia "follows 'the American Rule under which . . . every party to a case shoulders its own attorneys' fees, and recovers from other litigants only in the presence of statutory authority, a contractual arrangement, or certain narrowly-defined common law exceptions.'" *Coulter v. Gerald Family Care, P.C.*, 964 A.2d 170, 204 (D.C. 2009) (quoting *Psaromatis v. English Holdings I, LLC*, 944 A.2d 472, 490 (D.C. 2008)); *see also James G. Davis Constr. Corp. v. HRGM Corp.*, 147 A.3d 332, 337 (D.C. 2016) (explaining same and detailing common-law exceptions). Lt. Col. Burns does not argue that there is a relevant statute, contract, or common-law exception to the American Rule that would allow her to recover attorneys' fees. Instead, she submits that "D.C. law permits recovery of fees as an element of punitive damages." Pl.'s Omnibus Opp'n at 6–7.

It is true that District of Columbia law allows juries, or courts, to consider attorneys' fees and the costs of litigation in awarding punitive damages. *See, e.g.*, Standardized Civil Jury Instructions for the District of Columbia § 16.03 (listing "cost and duration of the litigation" and "attorney's fees that the plaintiff has incurred in this case" as factors relevant to punitive damages computation); *Ayala v. Washington*, 679 A.2d 1057, 1070 (D.C. 1996) ("In this jurisdiction, such evidence [of attorney fees and costs] is admissible as a factor in assessing punitive damages."); *Town Ctr. Mgmt. Corp. v. Chavez*, 373 A.2d 238, 246 (D.C. 1977) ("[T]his jurisdiction is in the minority in allowing attorneys' fees to be considered as an element of punitive damages[.]"). However, that does not mean that plaintiffs may recover attorneys' fees as part of the punitive damages assessment. In *Town Center Management Corp.*, for example, the District of Columbia Court of Appeals found that D.C. law disallowed awarding attorneys' fees and costs but allowed those costs "to be considered" in determining punitive damages. 373 A.2d at 245–46; *see also Gabriel v. Fernando*, 695 F. Supp. 600, 601–02 (D.D.C. 1988) ("Plaintiff's attorney's fees properly

may be considered by the jury in choosing an appropriate award of punitive damages, not in setting compensatory damages[.]"). Other courts have described it as "factor" relevant to assessing punitive damages. *See, e.g.*, *Ayala*, 679 A.2d at 1070; *McNamara v. Picken*, 965 F. Supp. 2d 1, 11 (D.D.C. 2013). But District of Columbia law does not allow recovery of attorneys' fees on this basis. Accordingly, to the extent that Lt. Col. Burns seeks recovery specifically of her attorneys' fees and costs, that request is stricken.

### ii. Disclosure of Attorneys' Fees and of Computation of Fees

Defendants further contend that Lt. Col. Burns should be disallowed from introducing any evidence related to attorneys' fees for two related reasons. First, they argue that she did not initially disclose her intent to either seek attorneys' fees, or to urge they be considered in assessing punitive damages, in her initial disclosures, supplemental disclosures, and discovery responses. Defs.' Mot. to Exclude Damages Evid. at 9–10. Second, they contend that she has not provided a computation of attorneys' fees, or the documents underlying her claimed attorneys' fees, in accordance with her discovery obligations and this Court's PSP Order. *Id.*; Defs.' Reply to Pl.'s Omnibus Opp'n at 9–10.

As previously explained, under Rule 26, a party must include in their initial disclosures "a computation of each category of damages claimed by the disclosing party." Fed. R. Civ. P. 26(a)(1)(A)(iii). They must also "make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based." *Id.* Moreover, parties have a continuing obligation to supplement or correct those disclosures under Rule 26. Fed. R. Civ. P. 26(e). Rule 37 provides that when a party fails to comply with these obligations, that party generally cannot "use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially

justified or is harmless," or the court may impose other appropriate sanctions. Fed. R. Civ. P. 37(c)(1). Parties resisting these sanctions have the burden of showing that their noncompliance was substantially justified or harmless. *Amiri*, 2019 WL 5653622, at *4. A court may also sanction a party for "fail[ing] to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f).

Here, Lt. Col. Burns included in her Complaint that she sought punitive damages. Second Am. Compl., ECF No. 26, at 8. But she did not disclose that she sought punitive damages or to introduce evidence of attorneys' fees related to those punitive damages in her initial disclosures. *See* Defs.' Mot. to Exclude Certain Exs. Ex. A at 2–3. She listed as damages "emotional injury, damage to her reputation, damage to her future career and delay in career development due to the improper 'Final Summative Assessment' of Dr. Levy, and termination of her fellowship, as well as breach of her fellowship agreement." *Id.* Ex. A at 2–3. Rather than providing any computation of damages, she explained that a jury would "properly quantify" her damages. *Id.* Ex. A at 3.

Lt. Col. Burns emphasizes, however, that in response to an interrogatory about damages she claimed, she responded: "Dr. Burns has incurred in an ongoing nature, legal fees in pursuing this matter, to date totaling over $33,000." *See id.* at 3. Even so, she did not provide, as requested by Defendants, "an identification of the source of the figures or other information used for the computation and a list of documents or other evidentiary material" on which the computation was based. *Id.* Furthermore, she has not sought to supplement her disclosures with additional information regarding punitive damages or attorneys' fees.

Defendants also argue that she failed to comply with this Court's PSP Order and Local Civil Rule 16.5. In its April 15, 2019 PSP Order, this Court required that the Joint Pretrial Statement include "[a]ll the information required by Local Civil Rule 16.5(b)" and "[a]n itemization of damages by the party seeking to recover, setting forth separately each element of

damages, and the monetary amount thereof, including prejudgment interest, punitive damages, and attorneys' fees." PSP Order at 2–4. Local Civil Rule 16.5(b) similarly requires "an itemization of damages the party seeks to recover," and specifies that the "itemization of damages shall set forth separately each element of damages, and the monetary amount thereof, the party claims to be entitled to recover of any other party, including prejudgment interest, punitive damages and attorneys' fees." LCvR 16.5(b)(1)(vii), (b)(8). Despite these rules, she only listed in the Joint Pretrial Statement that she requests attorneys' fees in an amount "to be determined." Joint Pretrial Stmt. at 24.

The Court agrees with Defendants that Lt. Col. Burns potentially did not comply with her Rule 26 obligations and further did not comply with her obligations under the PSP Order. But her request for punitive damages in the Complaint and her mention of attorneys' fees was sufficient to put Defendants on notice that she sought both categories of damages, which significantly lessens the prejudice that Defendants allege occurred as a result of her failures.[16] As Defendants frame it, that prejudice arises because Dr. Levy, who faces the intentional defamation claim, cannot at present defend against what Lt. Col. Burns claims are the relevant attorneys' fees. Defs.' Reply to Pl.'s Omnibus Opp'n at 10. To remedy any lingering prejudice, the Court will require Lt. Col. Burns to provide the itemization and computation that the PSP Order and Local Civil Rule 16.5 require in the parties revised Joint Pretrial Statement. When the Court sets a trial date, it shall set a schedule for production of documents supporting Lt. Col. Burns's claimed attorneys' fees.

---

[16] Because the Court decides that Defendants were on notice that Lt. Col. Burns sought punitive damages and potentially attorneys' fees (either independently or as part of the punitive damages analysis), the Court does not address whether Rule 26 required her to disclose information or computations regarding her requested punitive damages or the associated attorneys' fees. *See* Pl.'s Omnibus Opp'n at 6 (arguing that Rule 26 does not require disclosure of attorneys' fees).

Accordingly, preclusion of all evidence relating to attorneys' fees is an extreme sanction unwarranted on the present record, and the Court denies that portion of Defendants' Motion.

### iii. Scope of Evidence of Attorneys' Fees

The parties also appear to dispute the scope of evidence that Lt. Col. Burns must ultimately produce, and may potentially present, regarding her attorneys' fees and costs. On the one hand, the Hospital and Dr. Levy suggest that Lt. Col. Burns should specify which of the incurred fees and costs go toward her outstanding defamation claims as compared to her now-dismissed claims. Defs.' Mot. to Exclude Damages Evid. at 10; *see* Defs.' Reply to Pl.'s Omnibus Opp'n at 10. Lt. Col. Burns appears to object to this argument, claiming that her counsel was "not required to disclose privileged information for opposing counsel to gauge what aspects of a case" they have worked on. Pl.'s Omnibus Opp'n at 7. As this issue impacts what the parties must include in the revised Joint Pretrial Statement, the Court briefly addresses this issue here.

Few courts have considered this question in the specific context of attorneys' fees as a factor in assessing punitive damages. Judge Ellen S. Huvelle, however, addressed a similar question in *McNamara v. Picken*, 965 F. Supp. 2d at 11–13, when considering a motion for remittitur. There, the defendant and counter-claimant had presented attorneys' fees evidence relating not only to her counterclaims but all work on the case. *Id.* at 11. Judge Huvelle found that this was inconsistent with the principles underlying the American Rule, to which the District of Columbia adheres, because if plaintiff could have obtained attorneys' fees, she only could have done so on the claims that she brought and prevailed on. *Id.* at 12.

This reasoning is persuasive and similar reasoning can be applied here. Some of Lt. Col. Burns's claims are no longer at issue. Lt. Col. Burns may not prevail on all her remaining claims; and even if she did, punitive damages may not be available for all of them. *See* Standardized Civil

Jury Instructions for the District of Columbia § 17.14 (outlining what plaintiff must show for punitive damages award in defamation case); *id.* § 16.01, Comment ("Ordinary negligence will not support an award of punitive damages."). Allowing her to introduce attorneys' fees evidence relating to claims for which punitive damages are unavailable, or that she did not prevail on, would be essentially punishing Defendants for conduct that District of Columbia law does not recognize as subject to punitive damages, which are intended "to punish the defendant for his or her conduct and to serve as an example to prevent others from acting in a similar way." Standardized Civil Jury Instructions for the District of Columbia §§ 16.01, 17.14. It would also be in tension with the American Rule, which allows recovery of attorneys' fees only for claims that fall within one of the established exceptions. *See, e.g.*, *Synanon Found., Inc. v. Bernstein*, 517 A.2d 28, 38–42 (D.C. 1986) (concluding that attorneys' fees were available for bad faith litigation conduct but not for entire suit and remanding to trial court on that basis).

Accordingly, the attorneys' fees evidence cannot include fees relating to claims on which Lt. Col. Burns cannot prevail at this point, such as her contract claims. To the extent that she seeks punitive damages for her remaining claims, she must include the approximate current amount of those fees, organized by claim, in the revised Joint Pretrial Statement.

*    *    *

In sum, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion. The Court grants Defendants' request that it exclude evidence relating to lost income damages. As for attorneys' fees, the Court agrees that Lt. Col. Burns may not recover attorneys' fees for her defamation claims and grants the portion of Defendants' Motion requesting that it strike her request for those fees. However, the Court denies the portion of Defendants' Motion seeking to exclude all evidence of attorneys' fees at this point, as District of Columbia law allows it to be introduced

as a consideration when computing punitive damages. Lastly, the Court grants Defendants' Motion to the extent that it seeks to limit the scope of the evidence relating to attorneys' fees to any claims on which Lt. Col. Burns's prevails.

## F. Defendants' Motion *in Limine* to Exclude Certain Proposed Exhibits

Lastly, Defendants challenge fifteen of Lt. Col. Burns's proposed exhibits on several grounds. First, they contend that Lt. Col. Burns did not adhere to this Court's April 15, 2019 PSP Order because she identified fifteen exhibits in an untimely manner. She identified these exhibits on July 30, 2019—the day the Joint Pretrial Statement was to be filed—rather than on May 10, 2019—the date that the parties identified to exchange this information so they could comply with the Court's Order requiring them to have exchanged objections by May 24, 2019. Defs.' Mot. to Exclude Certain Exs. at 2–3. Second, Dr. Levy and the Hospital argue that six of these exhibits were also not produced during discovery and should be excluded on that basis. *Id.* at 4, 5–7. Lastly, Defendants argue that Exhibit 65, which Lt. Col. Burns describes as "Air Force Educational File for Plaintiff," should be excluded on relevance and other grounds. *Id.* at 7–8.

### 1. Lt. Col. Burns's Late Identification of Fifteen Exhibits

Dr. Levy and the Hospital first argue that fifteen exhibits should be excluded because Lt. Col. Burns failed to include them in the parties' exchange of exhibit lists, which was originally scheduled for May 10, 2019 based on the Court's PSP Order. In that Order, this Court instructed that the parties were to exchange written objections to the Joint Pretrial Statement by May 24, 2019, to exchange written responses to objections by June 12, 2019, and to exchange written replies by July 16, 2019. PSP Order at 6–7. According to Defendants, the parties agreed that they would exchange their lists of exhibits to be offered into evidence, which are required in a Joint Pretrial Statement under Local Civil Rule 16.5(b), by May 10, 2019. Defs.' Mot. to Exclude

Certain Exs. at 2. Lt. Col. Burns submitted her list of exhibits on May 18, 2019. *Id.* at 3. Defendants sent their objections to her on May 24, 2019. *Id.* Then, on July 30, 2019, she sent Defendants a "reworked exhibit list" that had an additional fifteen exhibits added. *Id.* This included Exhibits 1, 14, 23, 28, 34, 35, 40, 43, 65, 69, 71, 72, 73, 74, and 75. Defs.' Suppl. Objs. to Joint Pretrial Stmt. at 6–7.

Lt. Col. Burns does not contest that she did not explicitly include these exhibits on the exhibit list sent to Defendants on May 18, 2019. Nor does she explain why most of them were omitted from the exhibit list. Instead, she argues that seven of the fifteen exhibits (Exhibits 14, 23, 28, 34, 35, 40, and 43) were included in the exhibit folder received by Defendants and were omitted from the list. Pl.'s Resp. to Defs.' Suppl. Objs. at 2. She notes that Defendants sent "provisional" objections to these exhibits in May. *Id.* She also argues that Defendants were aware of two additional exhibits, Exhibits Nos. 1 and 65, because they were exhibits to the deposition of Col. Michael Forgione, M.D., who is listed as a Defense witness. *Id.* at 3. In other words, she suggests that Defendants have suffered no prejudice due to any tardiness on her part. She further contends that six of the exhibits—Exhibits 69, 71, 72, 73, 74, and 75—are new documents that Lt. Col. Burns only recently obtained from the Air Force, *id.*, and notes that she has recently obtained four similar documents that she wants to add as Exhibits 76 through 79, Pl.'s Omnibus Opp'n at 12.

"Typically, a district court enjoys broad discretion in managing its docket and determining the order in which a case should proceed." *Grimes v. District of Columbia*, 794 F.3d 83, 90 (D.C. Cir. 2015). To that end, the Federal Rules of Civil Procedure allow a court to impose sanctions for failure to obey "a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C). This includes excluding certain documents from being submitted into evidence. Fed. R. Civ. P. 37(b)(2)(A)(ii).

In recognition of the district court's special role in the management of litigation and its greater familiarity with the parties, "[t]he determination of an appropriate discovery sanction is left to the discretion of the trial court." *Hull v. Eaton Corp.*, 825 F.2d 448, 452 (D.C. Cir. 1987).

Here, Lt. Col. Burns has not failed to obey the Court's PSP Order such that it warrants excluding these fifteen exhibits on that basis alone. *See McNair v. District of Columbia*, 325 F.R.D. 20, 21 (D.D.C. 2018) ("Rule 37 is bounded by the 'concept of proportionality' between offense and sanction.'" (quoting *Bonds v. District of Columbia*, 93 F.3d 801, 808 (D.C. Cir. 1996))). While failing to exchange all the exhibits or exhibit lists may not have adhered to the spirit of the PSP Order, the Order itself did not set the schedule for that exchange. Moreover, contrary to their assertions, Defendants will not be severely prejudiced if this Court does not exclude these exhibits. Defendants were able to provide provisional objections to seven of the fifteen exhibits, were able to list their objections in their supplemental submission that this Court allowed, and as explained below, *see infra* Section IV.F.2, the Court will exclude six of the remaining exhibits (and four newly-proposed exhibits) relating to Lt. Col. Burns's alleged damages. Defendants will also have a second chance to list their objections to any of Lt. Col. Burns's exhibits in relation to the revised Joint Pretrial Statement that the Court is requiring the parties to submit.

The lack of prejudice in this specific circumstance, however, is no excuse for Lt. Col. Burns's apparent reluctance to abide by the deadlines set by this Court, as evidenced by her late submission of her objections to Defendants. A Scheduling Order is "intended to serve as 'the unalterable road map (absent good cause) for the remainder of the case.'" *Olgyay v. Soc'y for Envtl. Graphic Design, Inc.*, 169 F.R.D. 219, 220 (D.D.C.1996) (quoting *Final Report of the Civil Justice Reform Act Advisory Group of the United States District Court for the District of Columbia*

at 39 (Aug. 1993)).  "A scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'"  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir.1992) (quoting *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985)).  Indeed, "[d]isregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of litigation, and reward the indolent and the cavalier."  *Id.*  Especially as this case nears trial, the Court expects the parties to strictly adhere to the deadlines that it sets and to be aware that failure to comply with those deadlines may result in sanctions.

### 2. Documents Not Produced in Discovery

The Hospital and Dr. Levy further object to six of the exhibits on the basis that they were not produced during discovery.  This includes Exhibit 69 ("Education Training Report"), Exhibit 71 ("Meritorious Service Citation"), Exhibit 72 ("Officer Performance Report"), Exhibit 73 ("Promotion Recommendation 2017"), Exhibit 74  ("Promotion Recommendation Form 2016"), and Exhibit 75 ("Promotion Recommendation Form Phlem 2017").  Defs.' Mot. to Exclude Certain Exs. at 5–7.  In response, Lt. Col. Burns explains that these documents are "new" documents that she "recently obtained from the Air Force."  Pl.'s Omnibus Opp'n at 12.  She also indicates her intent to introduce four additional exhibits that she more recently obtained: Exhibit 76 ("Promotion Recommendation 2016"), Exhibit 77 ("Meritorious Service Award 2017"), Exhibit 78 ("Education/Training Report 2018"), and Exhibit 79 ("Officer Performance Report 2019").  *Id.*

Federal Rule of Civil Procedure 26 governs initial and supplemental discovery disclosures.[17]  Parties must disclose "all documents, electronically stored information, and tangible

---

[17] In their Motion *in Limine* addressing these exhibits, the Hospital and Dr. Levy cite to Rule 26(a) and Rule 26(e) of the Federal Rules of Civil Procedure, suggesting that their argument relies upon the initial and supplemental disclosure requirements.  *See* Defs.' Mot. to Exclude Certain Exs. at

things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses" and must make available "the documents or other evidentiary material"— including "materials bearing on the nature and extent of injuries suffered"—underlying their "computation of each category of damages claimed by the disclosing party." Fed. R. Civ. P. 26(a)(1)(A)(ii)–(iii). Under Rule 26, a party must further supplement its prior disclosures if it "learns in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1). A party who fails to provide information required by Rule 26 generally cannot use that information as evidence, or the court may impose other sanctions, "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The party resisting sanctions has the burden to show that its failure was either harmless or substantially justified. *Amiri*, 2019 WL 5653622, at *4. "The phrase 'substantially justified' is generally interpreted to mean 'justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person.'" *Wannall v. Honeywell Int'l, Inc.*, 292 F.R.D. 26, 35 (D.D.C. 2013) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).

Lt. Col. Burns does not contest that she failed to disclose or produce these documents. Instead, she appears to suggest that because these documents are new and (at least some) post-date the end of discovery, she is substantially justified in not providing them to Defendants. *See* Pl.'s Omnibus Opp'n at 11–12. But Lt. Col. Burns provides no explanation as to why these documents were just "recently obtained" from the Air Force, even though some of them date back to 2016. Nor does she explain why she did not seek to disclose these documents to Defendants once they were obtained. While she does not outright argue that her failure was harmless, she hints instead

---

6–7. The Court therefore does not address in this Memorandum Opinion whether Lt. Col. Burns also failed to produce these documents in response to specific discovery requests.

that any harm could be remedied by allowing additional depositions. *See* Pl.'s Omnibus Opp'n at 12 ("Should Defendants wish to depose Lt. Col. Burns before trial regarding this updated information, we do not object."). The lack of explanation here does not satisfy her burden. Moreover, these ten exhibits appear to relate to her lost income damages, evidence of which this Court has excluded as described above. *See supra* Section IV.E.1. For these reasons, and for the same reasons as discussed with respect to the lost income damages, the Court shall grant this portion of Defendants' Motion and exclude these ten exhibits.

### 3. Exhibit 65 (Lt. Col. Burns's "Educational File")

Lastly, the Hospital and Dr. Levy object to Lt. Col. Burns's intent to introduce Exhibit 65, which is a 132-page document that was an exhibit to Col. Forgione's deposition. Defs.' Mot. to Exclude Certain Exs. at 7–8; Pl.'s Omnibus Opp'n at 12. While Defendants mostly rely upon Evidence Rules 401, 402, and 403 governing relevance, they also mention in passing that the document is "replete with inadmissible hearsay." Defs.' Mot. to Exclude Certain Exs. at 7. Lt. Col. Burns describes this document as "the Air Force's Educational file for Lt. Col. Burns regarding the fellowship," which she explains "contains all of the communications to and from the Air Force and Defendants and Lt. Col. Burns regarding the fellowship." Pl.'s Omnibus Opp'n at 12.

While Defendants contend that proposed Exhibit 65's probative value is outweighed by its potential to prejudice them, mislead the jury, or confuse the issues, they have not provided many details about why. They only note that the document is "uncurated," that it has "incomplete, hand-marked" and "even illegible" records and correspondence, and that a handful of documents in Exhibit 65 are also separate documents. Defs.' Mot. to Exclude Certain Exs. at 7. Rather than substantively respond to Defendants' arguments, Lt. Col. Burns concludes that "[t]here should be

no objection to [the exhibit's] use at trial as evidence of the exchange of these communications." Pl.'s Omnibus Opp'n at 12. Neither party has provided this Court with a copy of the proposed Exhibit 65.

The parties have failed to provide this Court with sufficient information for it to determine whether Exhibit 65, or portions of it, should be excluded. In light of this, and of the other determinations in this Memorandum Opinion that may impact the parties' arguments, the Court denies the portion of Defendants' Motion as to Exhibit 65 without prejudice. If Defendants' want to raise this objection again, before the Court could decide whether Exhibit 65 should be excluded, it would require a copy of the proposed Exhibit 65 and more detailed briefing addressing whether the document or portions of it are inadmissible under Rules 401, 402, or 403 or any other rules.

*     *     *

The Court accordingly **DENIES IN PART**, **GRANTS IN PART**, and **DENIES WITHOUT PREJUDICE IN PART** Defendants' Motion *in Limine* to exclude these various exhibits. First, the Court denies Defendants' Motion to exclude the fifteen exhibits on the sole basis that Lt. Col. Burns did not adhere to the Court's PSP Order. Second, the Court grants Defendants' Motion to exclude the ten exhibits relating to Lt. Col. Burns's damages because she failed to demonstrate that her failure to produce them was either substantially justified or harmless. *See supra* Section IV.E.1 (finding same for evidence of lost income damages). Lastly, the Court denies without prejudice Defendants' Motion to exclude Exhibit 65. Before the Court could rule upon any future objection to Exhibit 65, it would require a copy of the proposed Exhibit 65 and more detailed briefing addressing exactly whether the document, or portions of it, is inadmissible under Rules 401, 402, and/or 403 or any other rules.

# V. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART**, **DENIES IN PART**, and **DENIES WITHOUT PREJUDICE IN PART** Defendants' Motion *in Limine* to Exclude Proposed Testimony and Evidence on Subjects that Are Not Relevant and Would Be Confusing, Irrelevant, Misleading, and Unfairly Prejudicial, ECF No. 100; **DENIES** Lt. Col. Burns's request that the Court find that the common interest privilege does not apply to the communications at issue; **DENIES WITHOUT PREJUDICE** Defendants' Motion *in Limine* to Exclude Witnesses Not Disclosed or Identified as Such by Plaintiff in Her Rule 26 Disclosures or Discovery, ECF No. 97; **GRANTS IN PART** and **DENIES WITHOUT PREJUDICE IN PART** Defendants' Motion *in Limine* to Exclude Proposed Testimony and Reports of Plaintiff's Expert Witness, Dr. Gregory Scott Blaschke, ECF No. 99; **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion *in Limine* to Exclude Damages Evidence for Loss of Income and Attorneys' Fees, and to Strike Plaintiff's Claim for Attorneys' Fees, ECF No. 96; and **GRANTS IN PART, DENIES IN PART**, and **DENIES WITHOUT PREJUDICE IN PART** Defendants' Motion *in Limine* to Exclude Documents Not Identified as Required by the Court's Pretrial Scheduling and Procedures Order or Previously Produced During Discovery, ECF No. 98.

In light of the above discussion and rulings, the parties shall be required to file a revised Joint Pretrial Statement as outlined in the accompanying Order. To the extent that the Court does not address any of the parties' remaining objections raised in the Joint Pretrial Statement, the Court **DENIES WITHOUT PREJUDICE** those objections. The parties may raise them again, if they are still relevant, when they file their revised Joint Pretrial Statement.

Date:   December 2, 2019

_____/s/_____

**COLLEEN KOLLAR-KOTELLY**
United States District Judge